# Commonwealth *v.* Trinkle, Appellant.

*Criminal law—Murder—Place of trial—Removal from courthouse to private residence—Constitutional law—Fair and public trial—Witness—Discretion of court—Abuse—Appeal.*

1. There is no statute in Pennsylvania which in terms states a court must be held in the courthouse.

2. Except under rare and special circumstances the trial should be held in the courthouse.

3. As a general rule, the order of the trial judge changing the place of trial from the courthouse to another place in the county seat, to take the testimony of a material witness unable through disease, or other illness, to attend the regular place for trial, will not be reversed unless it appears that there has been an abuse of discretion.

4. A conviction of murder of the first degree will not be reversed because the court below transferred the trial from the courthouse to a private residence in order to secure the evidence of a material witness for the Commonwealth, who was too ill to attend at the courthouse.

5. In such case it cannot be alleged that there was a mistrial because the room was too small to accommodate every member of the general public who desired to attend; nor because the attending circumstances of the taking of testimony in a sick room might unduly impress the jury.

6. Such trial does not offend the Constitution, but accords to every defendant a fair and public trial.

Argued January 7, 1924.   Appeal, No. 332, Jan. T., 1923, by defendant, from judgment of O. & T. Phila. Co., May T., 1923, No. 66, on verdict of guilty of murder of

the first degree, in case of Commonwealth v. Joseph Trinkle.   Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.   Affirmed.

Indictment for murder.   Before McDEVITT, J.

The opinion of the Supreme Court states the facts.

Verdict of guilty of murder of the first degree upon which sentence was passed.   Defendant appealed.

*Error assigned* was, inter alia, order directing removal of trial, quoting record.

*Edward A. Kelly,* with him *Alexander Eisenhower,* for appellant.—The court had no right to remove the trial of the case from the court room to a private house: People v. Murray, 89 Mich. 276; Roberts v. State, 100 Neb. 199; People v. Hartman, 103 Calif. 242; Tilton v. State, 5 Ga. App. 59.

*Maurice J. Speiser,* Assistant District Attorney, with him *Samuel P. Rotan,* District Attorney, for appellee.— The removal of the proceedings to a private house was proper under the circumstances: Com. v. Hoover, 227 Pa. 116; Com. v. Salyard, 158 Pa. 501; Com. v. Van Horn, 188 Pa. 143; Law v. Falls, 109 Ark. 395; Lee v. State, 56 Ark. 4; State v. Staley, 45 W. Va. 792; Bates v. Sabin, 64 Ver. 511; Litchfield Bank v. Church, 29 Conn. 137; People v. Warden, 102 N. Y. 374.

OPINION BY MR. JUSTICE KEPHART, March 3, 1924:

The judge in the court below continued the hearing of a homicide case then on trial from the courthouse to a house or building in the county seat to take the testimony of a material witness too ill to appear in court to testify, and whose removal from the house would in all probability have resulted in death.   It was not known, when the case was called for trial, that the witness was

unable to be present; she had been subpœnaed and, when called to testify, did not respond. The district attorney then ascertained her physical condition, but the jury had been empaneled and some of the witnesses heard. Her physician testified that to move her would likely prove fatal. The district attorney, after informing the court as to the materiality and importance of her evidence,—she was an eyewitness of the tragedy,—moved to adjourn the hearing to the witness's home, which, though defendant objected, the trial judge ordered. At that place all the formalities of law were observed. The judge, jury, prosecuting attorney, defendant and his counsel, defendant's relatives, newspapermen, and such members of the general public as were able to get into the room, were present; the latter were very few in number.

Court was opened in the usual manner. The witness was sworn, examined and cross-examined on all phases of her testimony. Indeed, the only evidence on which defendant could rely for mitigation of the offense was secured from this witness; it indicated his state of mind when the gun was fired. Whether this condition was due to excitement, nervousness, or the witness's version of what she saw, was immaterial; it had a tendency to benefit defendant. The proceedings were then continued in due form to the room in the courthouse where begun, resulting in defendant's conviction of murder in the first degree, upon which sentence was pronounced, and from which he appeals, assigning as error the removal of the court as above indicated. Our examination of the record shows every ingredient of the crime of which he stands convicted, and the evidence fully supports the verdict.

Defendant with others formed a plan to hold up the paymaster of the Fred A. Havens Contracting Company, and, on April 11, 1923, they purchased a shotgun at the store of Jacob Lapinsohn, in Philadelphia. Thursday night, preceding the murder, all the parties remained at the residence of one of their number, leaving early Fri-

day morning to locate their prey. Defendant and Sweeney of the party saw deceased at a bank at the corner of Broad Street and Fairmount Avenue, where he received $2,400, a pay-roll for some employees. The bandits followed him from the bank to the scene of the murder, which occurred on the pavement in front of the office of Fred A. Havens Company, and directly in front of the residence of this witness. Deceased was approached in front by defendant's associates, commanded to raise his hands, when defendant took the gun, the barrel of which had been sawed off, placed it in the small of the back of deceased, and likewise commanded him to hold up his hands. The men in front rifled the victim's pockets. During the robbery or immediately thereafter, Trinkle discharged the weapon, the contents entering deceased's back; he fell to the pavement, when defendant, after stepping across the body, entered a waiting automobile and fled. The bandits, joined by others of the party, were shortly afterwards captured. This defendant was separately tried. Another eyewitness did not testify in a manner satisfactory to the Commonwealth, hence the testimony of this witness became very important.

Defendant now contends he was deprived of a constitutional right to a fair and public trial in being forced to go to the home of the witness and there have the testimony taken against him from a witness too ill to attend court. Not that the conduct of the officers was unfair, but that all the circumstances attending the witness and her testimony, the time, the place, the person deposing, the heightened solemnity of the occasion, forced undue attention to this witness, and the jury's mind was thus over-influenced. This, defendant urges, would not have occurred had the woman been brought into the regular place of holding court, there to testify in the presence of the court and the general public, the latter not being able in any number to attend the hearing in her room, for lack of space.

The Constitution of the Commonwealth accords to every defendant a fair and public trial. He has the right to be heard by himself and counsel, to meet his witnesses face to face, and to have a speedy trial by an impartial jury. Defendant's counsel suggests this does not mean that part of the trial shall be public and part private, but that the whole trial shall be public. This undoubtedly is correct, but a public trial does not mean the room wherein it takes place should be large enough to admit every member of the general public who desires to attend, and that a mistrial would take place if one or any number of such members should be excluded because of lack of space. A public trial may be had, other matters being equal, where there is no restriction as to admission except the size of the room where the trial is conducted. It has been held, where the place is adequate, and people generally are excluded for no reason, or an insufficient reason, the accused was not accorded a public trial: People v. Murray, 89 Mich. 276, 50 N. W. 995. The provisions of the Constitution were no doubt incorporated into that document because of the abuse in early times of an accused's right to a fair trial. This was at a time when a defendant was subjected to a strictly private trial, or star-chamber proceeding, convicted on statements not deserving the name of evidence, ofttimes through the caprice of the ruling monarch. It was determined, when our Constitution was written, this abuse should not be present in our system of jurisprudence. It was thought the presence of the public generally would constrain a court, otherwise predisposed, to accord the witness a fair trial. Convictions by secret trials were therefore abolished. Public trials, with public records, were introduced, and our Constitution perpetuates this practice; but it must not be carried to an illogical end, requiring unreasonable or impossible things; nor must it be used as an instrument to permit crime to go unpunished.

There is no statute in Pennsylvania which in terms states a court must be held in the courthouse. The Act of April 14, 1834, (P. L. 333), section 58 (P. L. 352), provides that "a court of oyer and terminer and general jail delivery shall be holden four times, annually, in every county." Section 65 (P. L. 353) appoints the place of trial in case of an infectious or contagious disease prevailing at or near where the trial is ordinarily held. Section 66 (P. L. 353) makes such provision where the courthouse is unsafe or destroyed. And it has been held that the county commissioners shall provide a suitable place for holding court, and may, by mandamus, be compelled to do so. The inference from these acts and decisions is to the effect that the courthouse is the lawful place for trial.

In Summers v. Kramer, 271 Pa. 189, 196, we repeated the definition "a court is a place where justice is judicially administered." And in Carter's Est., 254 Pa. 518, in striking down the proceeding, we said that a court must be understood to mean a tribunal officially assembled under authority of law, at the appropriate time and place for the administration of justice. In that case the whole proceeding was begun and completed in the office of the president judge. The reasoning in Carter's Est, supra, was the same as in Jones v. O'Connor, 252 Pa. 311, where the judge ordered the further hearing of a contested election case at his chambers in a city some distance from the county seat.

It is no doubt correct, and the rule should be rigidly observed, that all legal business to be heard by a judge and jury or a judge without a jury, over which our various courts as constituted have jurisdiction, should be conducted in the courthouse at the county seat. It is only on rare occasions, such as the instant case, or in minor matters by agreement of counsel, that court can be conducted in places other than the courthouse, except of course as directed by statute.

In the progress of a trial, as here, circumstances may arise making it impossible to bring matters of evidence to the presence or hearing of the jury in the court room; that the trial may properly proceed and the law be vindicated, the trial may be continued to places other than the county seat, as, for illustration, a view of the premises where the homicide had been committed: Com. v. Salyards, 158 Pa. 501; Com. v. Van Horn, 188 Pa. 143. Such acts do not violate any right of the accused; nor does taking of testimony of a witness under circumstances as here indicated show an abuse of discretion or the violation of any substantial right of the accused. It would indeed be unfortunate if we were compelled to hold that, after the Commonwealth had proceeded with the trial of a case, and it suddenly developed its most important witness was ill, the court, under our system, was powerless to act, and the accused must escape all punishment. We are not compelled to so hold, and indeed the Commonwealth would have been open to grave censure if it had not called all the persons who had witnessed the homicide or knew anything about it, and their testimony taken, or, if this could not be done, moved for the order of which complaint is now made.

As a general rule, the order of a trial judge, changing the place of a trial to another place in the county seat to take the testimony of a material witness unable, through disease, or other illness, to attend the regular place for trial, will not be reversed unless it appears there has been an abuse of discretion.

We are not impressed with the argument that the attending circumstances unduly impressed those connected with the trial, with the probability of truthfulness of this witness's statements. All criminal trials should proceed on the basis of seriousness and solemnity, without qualification or degree. And the jury should not consider evidence taken in a room where one is sick of any higher evidential value than that taken in the court room. Indeed, its tendency might be the opposite. Defendant's

counsel calls attention to the fact that the witness was surrounded by images, pictures and fixtures indicating her faith to be Roman Catholic. She held in her hands a crucifix and beads, and there were members of the jury of this faith, who would more likely be impressed with her testimony taken under the circumstances than if she had appeared on the witness stand. The same argument could be used if an aged nun or priest testified in court, or any other person belonging to any particular sect or order wearing a particular dress to indicate his or her faith. These are circumstances of a trial which cannot be obviated. To establish rules to govern such cases would be a serious reflection on our jury system. Had this witness been brought to court lying on a stretcher, with the crucifix in her hand, counsel would scarcely make the same argument.

The authorities in other states not entirely in harmony with this view are largely controlled by their statutes, as, for instance, Carter v. State, 100 Miss. 342, 56 So. 454, Ann. Cas. 1914 A., 369; Mell v. State, 133 Ark. 197, 202 S. W. 33; Dunn v. State, 2 Ark. 229, 35 Am. Dec. 54. Even in some of these jurisdictions it has been held not necessary that every step be taken in the court room: Scott v. State, 133 Ala. 112, 32 So. 623; State v. Richards, 126 Iowa 497, 102 N. W. 439; Litchfield Bank v. Church, 29 Conn. 137; Bates v. Sabin, 64 Vt. 511, 24 Atl. 1013. There are many cases which support the view we have announced: Hampton v. U. S., Morris (Iowa) 489; State v. Tracy, 34 N. D. 498, 158 N. W. 1069; Underwood v. Commonwealth, 119 Ky. 384, 84 S. W. 311; Davis v. Commonwealth, 121 S. W. (Ky.) 429; Humphrey v. Humphrey, 3 Neb. Unof. 467, 91 N. W. 856; Selleck v. Janesville, 100 Wis. 157, 75 N. W. 975, 41 L. R. A. 563, 69 Am. St. Rep. 906.

We are of opinion the court below did not abuse its discretion in ordering the trial to take place where it did.

Judgment affirmed, and it is directed that the record be remitted for the purpose of execution.