455 A.2d 654

**COMMONWEALTH of Pennsylvania**

v.

**Larry JOHNSON, Appellant.**

Superior Court of Pennsylvania.

Argued March 15, 1982.

Filed Dec. 17, 1982.

Reargument Denied Feb. 25, 1983.

---

**4.** Because of our disposition of this case, we need not address appellant's remaining contentions.

Paul R. Gettleman, Pittsburgh, for appellant.

Kemal A. Mericli, Assistant District Attorney, Pittsburgh, for Commonwealth, appellee.

Before SPAETH, JOHNSON and HOFFMAN, JJ.

SPAETH, Judge:

This is an appeal from a judgment of sentence to life imprisonment for second degree murder. The murder was committed in the course of a robbery. Over appellant's objection, the lower court excluded the public from the court room during the selection of the jury. Appellant argues that the lower court thereby denied him his Consti-

tutional right to a public trial.[1] We agree. The judgment of sentence will therefore be vacated and the case remanded for a new trial.

–1–

Before we may consider appellant's argument on its merits, we must dispose of a procedural issue.

The lower court has not filed an opinion explaining why it excluded the public from the court room during the selection of the jury, or, indeed, responding to any of the issues that appellant has raised. Instead the lower court has filed only a pre-printed form. The form is entitled "Opinion" and contains blank spaces in which certain information has been typed in, to the effect that appellant was found guilty on December 7, 1978, of second degree murder, robbery, and criminal conspiracy; that on November 18, 1980, he was sentenced to life imprisonment; and that on November 20, 1980, he filed a direct appeal to this court. The form then concludes as follows:

> On *November 21, 1980*, we did, pursuant to Pennsylvania Rules of Appellate Procedure 1925(b), direct the appellant to file of record and serve upon this Court a brief and concise statement of the matters complained of on appeal by *December 5, 1980*. To the present time, we have yet to receive same and are uncertain as to the basis of the appeal. We have made an independent examination of the record but are unable to assume or presume the nature of appellant's objections and are, therefore, unable to discuss them.

Rule 1925(b) provides:

---

1. Appellant also argues that the lower court committed reversible error in permitting a person who had been hypnotized by the police to testify; in interfering with the conduct of the trial; in permitting certain evidence regarding a fingerprint; in permitting him only seven peremptory challenges; in refusing a requested missing-witness charge; and in refusing to require the Commonwealth to disclose the name of an eyewitness informant. Appellant also argues that the Commonwealth by its peremptory challenges deliberately excluded members of his race from the jury. We do not reach any of these arguments.

(b) *Direction to file statement of matters complained of.* If the lower court is uncertain as to the basis for the appeal, the lower court may by order direct the appellant forthwith to file of record in the lower court and serve on the trial judge a concise statement of the matters complained of on appeal. A failure to comply with such direction *may be considered by the appellate court* as a waiver of all objections to the order, ruling or other matter complained of.

Pa.R.A.P. 1925(b) (emphasis added).

The procedural issue we must decide, therefore, is whether we should exercise the discretion given us by Rule 1925(b) to hold that by his failure to file a statement of matters complained of by the date set by the lower court, appellant has waived the arguments he now makes to us. *See Commonwealth v. Silver,* 499 Pa. 228, 238, 452 A.2d 1328, 1333 (1982) ("waiver provision of Rule 1925(b) is clearly discretionary" and "is properly invoked only where failure to file a statement or omission from a statement of issues raised on appeal defeats effective appellate review."); *Commonwealth v. Crowley,* 259 Pa.Super. 204, 393 A.2d 789 (1978).

The discretion given us by Rule 1925(b) is to be exercised with great care. For if we say that an objection has been waived because of a failure to comply with the rule, that may be equivalent to dismissing the appeal. Here, that would be so.

■ In deciding whether to hold an objection waived, we must examine the failure to comply with Rule 1925 in the context of the entire case. We must therefore always ask how serious was the failure. The inquiry is equitable in nature, and is similar to that undertaken in other cases involving an exercise of discretion. One consideration must be balanced against another. *See, e.g., Provident Credit Corp. v. Young,* 300 Pa.Super. 117, 446 A.2d 257 (1982) (en banc) (collecting cases); *Raymond J. Brusco Funeral Home v. Sicilia,* 277 Pa.Super. 115, 419 A.2d 688 (1980); *Toplovich v. Spitman,* 239 Pa.Super. 327, 361 A.2d 425

(1976). The less consequential the objection in question, and the more egregious the failure to comply with Rule 1925, the more likely are we to hold the objection waived; the more consequential the objection, and the slighter the failure, the less likely. Here, the case is very grave: second degree murder, with life imprisonment; the objection in question raises an issue of central importance, not simply for this case but for the trial of criminal cases generally; and the failure to comply with Rule 1925 was very slight.

December 5, 1980, the date by which appellant was to file his statement under Rule 1925(b), was a Friday. On Monday, December 8, appellant's counsel filed a "Brief in Support of New Trial and/or Arrest of Judgment." Except for its title, the brief qualified in every respect as a statement under Rule 1925(b), for it contained a concise statement of the matters that appellant complained of. As regards appellant's complaint that he was denied his right to a public trial, the brief says:

> This Court committed reversible err[or] when it locked the courtroom and forbid the public access to the jury selection in the instant case. The constitutions of both Pennsylvania and the United States guarantee to the defendant the right to a public trial at *all* stages of the proceedings. *Commonwealth v. Hayes*, 489 Pa. 419, 414 A.2d 318 (1980).

Record at 46.

Appellant's brief is stamped as "Received" by the District Attorney on December 8, at 10:42 A.M., and as "Filed Clerk of Courts Dec. 9, 1980." Thus, while the record does not disclose when the brief was delivered to the chambers of the lower court, it seems likely that delivery occurred on either December 8 or December 9. The lower court did not file its form opinion until December 10. It therefore appears that although appellant's brief was late, it was nevertheless filed in time in the sense that it was filed in time for the lower court to be able to respond to its arguments. The lower court's statement in its opinion that it was "unable to

assume or presume the nature of appellant's objections" appears to have been made inadvertently, *i.e.,* without awareness that appellant had already filed a brief stating his objections.

The record discloses other facts that bear upon the extent of appellant's failure to comply with Rule 1925(b). On December 11, 1978, appellant had filed post-trial motions for a new trial or in arrest of judgment. In those motions, he had argued the issues he now argues to us, including the issue that the lower court erred in excluding the public from the court room during the selection of the jury. Therefore, whenever the lower court became aware of appellant's brief, it must have recognized appellant's arguments as arguments that it had already considered and rejected. It may be that the lower court was, in a narrow sense, "within its rights" in nevertheless refusing to file an opinion explaining its rejection of appellant's arguments, that is, in deciding that because the brief was late, it need not be considered. However, the court had sentenced appellant to life imprisonment. We think that a refusal to explain a decision of such gravity should rest on something more substantial than the fact that counsel filed his brief on December 8 or 9 instead of on December 5, especially given the intrinsic importance of at least two of appellant's arguments: the right to a public trial, and (an argument that we do not need to reach, but that has in another case received the attention of the Supreme Court, *Commonwealth v. Nazarovitch,* 496 Pa. 97, 436 A.2d 170 (1981)), whether a person who has been hypnotized by the police may testify.

Finally, as it happens, we are not handicapped by the lower court's refusal to file an opinion. At the time of overruling appellant's objection, the lower court, as we shall see, stated its reasons for excluding the public from the court room during the selection of the jury. We are therefore in a position to appraise the validity of the court's ruling, and probably in as good a position as if the court had filed an opinion, for presumably in its opinion the court

would have repeated the reasons it gave at the time it made its ruling. *See Commonwealth v. Silver, supra,* 499 Pa. 238, 452 A.2d at 1333.

■ In summary, therefore: It is true that appellant failed to file a statement under Rule 1925(b) by December 5, 1980, as required by the lower court. However, by December 8 or 9 he did file a brief, advising the lower court of the matters he complained of; one of those matters was the lower court's ruling excluding the public from the court room; appellant had earlier argued that matter; and the court's reasons for its ruling appear of record. On these facts it would be an abuse of our discretion to hold that appellant has waived his objection to the lower court's ruling.[2]

–2–

The following is the entire record on the issue of the lower court's ruling excluding the public from the court room during the selection of the jury:

MR. GETTLEMAN [counsel for appellant]: I would like him arraigned before the jury selection.

THE COURT: I don't think there is any necessity for that.

MR. GETTLEMAN: All right. Well, I will just make these requests and you can either approve them or deny them. Whatever you want to do.

I would request the public be allowed to be present for the selection of the jury.

THE COURT: Well, that request is denied.

MR. GETTLEMAN: Fine.

THE COURT: We are operating in—

MR. GETTLEMAN: All right.

**2.** This conclusion, and the discussion leading up to it, are not to be understood as excusing counsel for his unprofessional carelessness in failing to file and serve a properly entitled statement by the date specified by the lower court. It is counsel's obligation—in every case, but especially in a case so grave as this—to be meticulous in abiding by proper procedure. In another case the careless failure to abide by the rules might, when taken with the other facts of the case, lead to the conclusion that we should exercise our discretion to find waiver.

THE COURT: Well, just a moment. Let me tell you something, Mr.—

MR. GETTLEMAN: Gettleman.

THE COURT: Gettleman.

Before you get started don't you start to be contemptuous in the trial of this case.

We are trying to insure that this man will receive a fair trial, but you don't tell me what your ruling is.

MR. GETTLEMAN: That is not my—you made your ruling and I said fine. I accept your ruling.

THE COURT: No, you weren't ready to accept anything.

I want to put on the Record the reasons that we can't tolerate a situation like that is because we are operating in a Courthouse without any heat in the halls. That is number one.

We have no facilities that are large enough to accommodate a situation like that and we are not going to intimidate—we are not going to have any intimidation of jurors during the time they are being selected.

MR. GETTLEMAN: Okay. For the—

THE COURT: It hasn't been the policy—it's never been the policy in this Court to do that and you know it.

MR. GETTLEMAN: All right. For the Record I would like to put on the Record at least there are fifty empty seats in the Courtroom right now.

THE COURT: Yes.

MR. GETTLEMAN: And I just made the request that the public be—

THE COURT: Well, the request is denied.

Is there any particular reason why that should be?

MR. GETTLEMAN: Right. Because my client is entitled to a public trial at each and every stage and there are no provisions in the rules of criminal procedure in Pennsylvania which would permit a trial Judge to close the Courtroom during any stage of the proceedings.

THE COURT: Yes. Well, all right. Your objection is overruled.

N.T. I, at 8-10.

-3-

■ If appellant was denied his right to a public trial, a new trial must be granted; no showing of prejudice is required. *Commonwealth v. Knight*, 469 Pa. 57, 364 A.2d 902 (1976). *And see United States ex rel. Bennett v. Rundle*, 419 F.2d 599, 608 (3rd Cir.1969) (To require proof of actual prejudice would force defendant to prove what the disregard of his Sixth Amendment public trial right has made it impossible for him to learn); *United States v. Kobli*, 172 F.2d 919, 921 (3rd Cir.1949) (Violation of constitutional right to public trial necessarily implies prejudice and defendant need not prove actual injury, which is difficult or impossible to prove in such cases). The guarantee of a public trial in a criminal case is not for the protection of only the accused. The victim, in particular, and the community, in general, are also within the guarantee. "[I]f people are to use the courts, they must trust them. Courts achieve this goal by allowing people to observe, study, and compare them with other methods of resolving disputes." *All Courts Shall Be Open: The Public's Right to View Judicial Proceedings and Records*, 52 Temple L.Q. 311 (1979). (The author of this comment notes that its title derives from William Penn's proclamation of the Duke of York's Law for Pennsylvania in 1682. *Id.* at 311 n. *)

In *In re Oliver*, 333 U.S. 257, 68 S.Ct. 499, 92 L.Ed. 682 (1948), the United States Supreme Court discussed the basis of the guarantee:

This nation's accepted practice of guaranteeing a public trial to an accused has its roots in our English common law heritage. The exact date of its origin is obscure, but it likely evolved long before the settlement of our land as an accompaniment of the ancient institution of jury trial. In this country the guarantee to an accused of the right to a public trial first appeared in a state constitution in

1776. Following the ratification in 1791 of the Federal Constitution's Sixth Amendment ... most of the original states and those subsequently admitted to the Union adopted similar constitutional provisions. Today almost without exception every state by constitution, statute, or judicial decision, requires that criminal trials be open to the public.

The traditional Anglo-American distrust for secret trials has been variously ascribed to the notorious use of this practice by the Spanish Inquisition, to the excesses of the English Court of Star Chamber, and to the French monarchy's abuse of the *lettre de cachet*. All of these institutions obviously symbolized a menace to liberty .... Whatever other benefits the guarantee to an accused that his trial be conducted in public may confer upon our society, the guarantee has always been recognized as a safeguard against any attempt to employ our courts as instruments of persecution.

*Id.* at 266–70, 68 S.Ct. at 504–506 (footnote citations omitted).

■ The Sixth Amendment guarantee of a public trial in a criminal case is binding on the states through the due process clause of the Fourteenth Amendment. *Duncan v. Louisiana,* 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968); *United States ex rel. Bennett v. Rundle,* 419 F.2d 599 (3rd Cir.1969). Our state constitution also guarantees a public trial. Indeed, the state constitution alluded to in the preceding quotation from *In re Oliver* is our constitution, for "[T]he Pennsylvania Constitution of 1776 was the first to include the guarantee to an accused of the right to a public trial." *Commonwealth ex rel. Paylor v. Cavell,* 185 Pa.Super. 176, 181–182, 138 A.2d 246, 248–249 (1958), *cert. denied.* 358 U.S. 854, 79 S.Ct. 84, 3 L.Ed.2d 888 (1959). Article 1, section 9, provides that "[i]n all criminal prosecutions the accused hath a right to be heard by himself and his counsel ..., and, in prosecutions by indictment or information, a speedy public trial by an impartial jury," and article 1, section 11, provides that "[a]ll courts shall be

open." Pa. Const. Art. 1, sec. 9, 11. *And see, Commonwealth ex rel. Paylor v. Cavell, supra* (Defendant has right to public trial, and deprivation thereof is violation of Article 1, Sections 9 and 11 of the Pennsylvania Constitution and probably of the procedural due process clause of U.S. Constitution, Fourteenth Amendment).

–4–

■ The Commonwealth argues that appellant was not denied his right to a public trial because the selection of the jury is not part of the trial. Brief for Commonwealth at 11. In *Pfleeger v. Swanson,* 229 Or. 254, 367 P.2d 406 (1961), the court had to decide whether an application for a motion made immediately after the swearing of the jury, but before any evidence was presented, was timely made where a statute required such a motion to be made "before trial." To help solve this question the court observed that "[t]he word 'trial' is used, both in legal parlance and in statutes, to mean different things." *Id.* at 257, 367 P.2d at 408. It then pronounced that "[a]lthough the *voir dire* examination is a part of the trial, it is not a part of the trial of the facts," *id.* at 257, 367 P.2d at 408, and went on to interpret the statutory phrase "before trial" as meaning "before the trial of the facts," not before the "trial" itself, which begins with the voir dire. And so the motion was, in this way, held timely.

The problem, however, is not *what* is the definition of "trial" but what *should* be the definition, and to solve *that* problem, one must consider the reasons for the guarantees of a public trial. It is of course possible, as the court in *Pfleeger* said, to define trial "to mean different things." But if one keeps in mind the reasons for the constitutional guarantee of a public trial, one will see that "trial" should not be defined as "the trial of the facts," meaning by that to exclude the process of selecting the jury. For "the facts" are what the jury *says* they are. (One is reminded of the baseball umpire who said that some pitches were balls and some strikes, but they weren't *anything* until he called

them.) Defining "trial" as "trial of the facts" therefore begs the question.

The Court of Appeals for the Ninth Circuit has recently spoken to this issue, in *United States v. Brooklier*, 685 F.2d 1162 (1982). There the government argued that the public's First Amendment right to access to criminal proceedings applies only to "trials," and that voir dire is not part of the trial. Rejecting this argument, the court said:

> Under current practice, voir dire is normally conducted in open court. No evidence has been cited that historical practice was to the contrary.
>
> There can be no doubt of the importance of public scrutiny of the jury selecting process to the effective functioning of the government as well as of the judicial system itself. The meticulous care devoted to securing a fair and impartial jury exemplifies the search for even-handed justice characteristic of our system of criminal justice. Public access to the process will heighten public respect for that system. At the same time public scrutiny will encourage those who participate in the jury selection process to enhance the quality of the process and safeguard its integrity.

*Id.* at 1167.

It is true that *Brooklier* involved the First Amendment rather than the Sixth, but, as the court in *Brooklier* remarked, "[n]othing would seem to turn upon" whether the public's right of access is regarded as arising from the one amendment rather than the other. *Id.* at 1167. It is also true that in *Brooklier* the defendant sought exclusion of the public rather than, as here, opposing exclusion. But nothing turns upon that difference either. For whether "public trial" includes the process of selecting the jury cannot depend upon which party—the prosecution or the defendant—seeks to exclude the public.

*Brooklier* is only the most recent decision on point. There is ample other authority for the proposition that the guarantee of a public trial means that the process of selecting the jury must be public.

In *Hopt v. Utah*, 110 U.S. 574, 4 S.Ct. 202, 28 L.Ed. 262 (1884), the validity of the trial court's judgment was challenged "upon the ground that a part of the proceedings in the trial were conducted in the absence of the defendant." *Id.* at 575–76, 4 S.Ct. at 203. To resolve this issue the Court had to apply a section of the Criminal Code of Procedure of Utah, which provided that in felony cases a defendant must be personally present at the trial. In *Hopt*, after the defendant challenged six jurors for bias, "triers" were appointed. The triers then took each "juror from the courtroom into a different room and tried the grounds of challenge out of the presence as well of the court as of the defendant and his counsel." *Id.* at 577, 4 S.Ct. at 204. Writing for the Court, Justice HARLAN noted that trial counsel

> insisted, in behalf of the defendant, that the action of the court in permitting the trial in his absence of these challenges of jurors was so irregular as to vitiate all the subsequent proceedings. This point is well taken.

*Id.* at 577, 4 S.Ct. at 204.

Justice HARLAN went on to explain that the purpose of the Utah Criminal Code provision in question was

> to prevent any steps being taken, in the absence of the accused and after the case is called for trial, which involves his substantial rights ... and his life or liberty may depend upon the aid which, by his personal presence, he may give to counsel and to the court and triers, in the selection of jurors.

*Id.* at 578, 4 S.Ct. at 204.

Justice HARLAN concluded his analysis by holding the following:

> For every purpose, therefore, involved in the requirement that the defendant shall be personally present at the trial, where the indictment is for a felony, the trial commences at least from the time when the work of impaneling the jury begins.

*Id.* at 578, 4 S.Ct. at 204.

*Hopt* is of course a stronger case than the present case, for in *Hopt* everyone, including the defendant, was excluded from the process of selecting the jury, while here, only the public was. That factual difference, however, does not undermine the Court's holding that "the trial commences at least from the time when the work of impaneling the jury begins."

*United States v. Sorrentino,* 175 F.2d 721 (3d Cir.1949), *cert. denied,* 338 U.S. 868, 70 S.Ct. 143, 94 L.Ed. 532 (1949), *reh. denied,* 338 U.S. 896, 70 S.Ct. 238, 94 L.Ed. 551 (1949), is to the same effect as *Hopt.* There the court said that "[t]he constitutional guarantee [of the Sixth Amendment to a public trial] . . . applies to the entire trial, including that portion devoted to the selection of the jury." *Id.* at 722. The Commonwealth dismisses this as "mere *dicta,*" saying that *Sorrentino* "concerns exclusion of spectators during actual trial." Brief for Commonwealth at 11–12. On the contrary, in *Sorrentino* it is stated that

> the exclusionary order of the trial judge was relaxed on the last three days of the trial but . . . it was enforced on the first day during which the jury was selected. The Government argues that since the public was admitted on the three days during which testimony was taken the defendant actually had a public trial within the meaning of the Sixth Amendment. The constitutional guarantee, however, applies to the entire trial, including that portion devoted to the selection of the jury. Accordingly it must be held that the defendant's constitutional rights were violated by the enforcement of the exclusionary order on the first day of the trial unless those rights were validly waived by him.

> *Id.* at 722.

Although the court in *Sorrentino* went on to hold that the defendant had in fact waived his right to a public trial, that holding was reached only after, and as a consequence of, the court's holding that the guarantee of a "public trial" includes the process of selecting the jury.

We cited and followed *Sorrentino* in *Commonwealth v. Bundridge*, 254 Pa.Super. 126, 385 A.2d 558 (1978), where three judges held, with three judges concurring in the result, that the defendant's motion under Rule 1100 was not filed "before trial," and was therefore filed too late, when it was not filed until after the voir dire had been completed.

Finally, the conclusion that a "trial" must be held to include the process of selecting the jury is embodied in Rule 1117 of the Rules of Criminal Procedure, as follows:

(a) The defendant shall be present at the arraignment, at every step of the trial including the impaneling of the jury and the return of the verdict, and at the imposition of sentence, except as otherwise provided by this rule. The defendant's absence without cause shall not preclude proceeding with the trial including the return of the verdict.

Pa.R.Crim.P. 1117.

*Cf. Commonwealth v. McLaurin*, 292 Pa.Super. 392, 437 A.2d 440 (1981), where we held that counsel was ineffective for permitting a suppression hearing to be held in the defendant's absence. *See also People v. Teitelbaum*, 163 Cal.App.2d 184, 206–207, 329 P.2d 157, 172, *cert. denied*, 359 U.S. 206, 79 S.Ct. 738, 3 L.Ed.2d 759 (1958) (public trial includes jury impanelment, opening statements, presentation of evidence and arguments); *Wilhite v. Agbayani*, 2 Ill.App.2d 29, 33, 118 N.E.2d 440, 442 (1954) (trial begins when jury called into box for examination of qualifications).

We therefore hold that appellant's right to a public trial, under both the United States Constitution and the Pennsylvania Constitution, included the right to have the jury that was to try him selected in public.

–5–

■ The right to public trial is not, however, absolute; its exercise must be considered in relationship to other important interests. *United States ex rel. Bennett v. Rundle*, 419 F.2d 599 (3d Cir.1969); *United States v. Kobli*, 172 F.2d 919 (3d Cir.1949); *Commonwealth v. Knight*, 469 Pa. 57, 364 A.2d 902 (1976). Thus in *Commonwealth ex rel. Pay-*

*lor v. Cavell, supra,* this court stated that a "portion of the public may be excluded to prevent overcrowding; to maintain proper decorum; or where special circumstances warrant, such as the exclusion of youthful spectators in the case involving scandalous or indecent matters which might be demoralizing to immature minds." *Id.* 185 Pa.Super. at 182, 138 A.2d at 249. *See United States v. Kobli, supra; Commonwealth v. Burton,* 459 Pa. 550, 330 A.2d 833 (1974); *Commonwealth v. Trinkle,* 279 Pa. 564, 568, 124 A. 191, 192 (1924).

■ The further question we must answer, therefore, is whether the record discloses any interest, or reason, sufficient to support the lower court's limitation of appellant's right to a public trial. In *United States ex rel. Bennett v. Rundle,* 419 F.2d 599 (3d Cir.1969), the court said that the propriety of a limitation on the right to a public trial must be tested by the standard of "strict and inescapable necessity." *Id.* at 607. Whether that standard has been met will of course depend upon the circumstances of the particular case. *United States ex rel. Lloyd v. Vincent,* 520 F.2d 1272, 1275 (2d Cir.), *cert. denied,* 423 U.S. 937, 96 S.Ct. 296, 46 L.Ed.2d 269 (1975) (not error to clear courtroom for testimony of undercover agent to preserve his value to law enforcement agencies); *United States ex rel. Laws v. Yeager,* 448 F.2d 74, 81 (3d Cir.1971) (not error to exclude mother of witness who was testifying against his brother and was intimidated by mother's presence); *compare Commonwealth v. Hodge,* 246 Pa.Super. 71, 369 A.2d 815 (1977) (not error to remove rape victim's classmates from courtroom during victim's testimony) *with State v. Hensley,* 75 Ohio St. 255, 256, 79 N.E. 462, 464 (1906) (order excluding the general public in anticipation of obscene testimony held too broad). *And see Globe Newspaper Co. v. Superior Court,* 457 U.S. 596, 102 S.Ct. 2613, 73 L.Ed.2d 248 (1982) (statute construed to require closure of rape and other sexual assault trials during testimony of victims who are minors struck down as violative of First Amendment). In no circumstances, however, is indiscriminate exclusion proper.

*United States v. Kobli, supra* (judge cannot, without violating Sixth Amendment, indiscriminately exclude the public from a trial, but may only exclude those whose presence hampers court's functioning).

■ We have already, in stating the case, quoted the lower court's reasons for its order excluding the public from the courtroom during the selection of the jury. *See* pages 657 to 658, *supra.* There are four reasons. They fall far short of stating a "strict and inescapable necessity" for the court's order.

The court's first reason was that "we are operating in a Courthouse without any heat in the halls." N.T. I at 9. We are not sure we understand this reason. Perhaps the court feared that because the halls were unheated, the public would come into the courtroom to keep warm, and so crowd the courtroom as to interfere with the conduct of the trial. However, the record shows that there were at least fifty empty seats in the courtroom. N.T. I at 10.

The court's second reason was that "[w]e have no facilities large enough to accommodate a situation like that." N.T. I at 9. If by this the court was referring to the possibility that the courtroom would be overcrowded, again, given the fifty empty seats, no basis for fearing that that might happen appears. In any event, celebrated trials—assuming that this was a celebrated trial—are often attended by a lot of people, with many others having to be turned away because the court room is not large enough. The fact that a courtroom cannot accommodate everyone is no reason for accommodating no one.

The court's third reason was that "we are not going to have any intimidation of jurors during the time they are being selected." N.T. I at 10. But the record discloses no reason to suppose that permitting the public to be present would have resulted in any intimidation. To the contrary, as the court in *United States v. Brooklier, supra,* observed, "[P]ublic scrutiny will encourage those who partici-

pate in the jury selection process to enhance the quality of the process and safeguard its integrity."

The court's fourth, and final, reason was that "[i]t hasn't been the policy—it's never been the policy in this Court to do that and you know it." N.T. I at 10. If by this the court meant that it had never been its policy to allow jurors to be intimidated during the time they were being selected, again, there is no reason to suppose that permitting the public to be present would have resulted in any intimidation. If the court meant that it had never been its policy to permit the public to be present during the selection of the jurors, whatever the circumstances, we can only observe that the court's policy was in violation of both the United States Constitution and the Pennsylvania Constitution.

The judgment of sentence is vacated and the case remanded for new trial.

JOHNSON, J., files a concurring statement.

JOHNSON, Judge, concurring:

I whole-heartedly join parts 2 through 5 of the opinion in this case, on the issue of the right to jury selection in public.

I also agree that the failure to file a Rule 1925(b) statement of matters complained of in this case does not waive the objection to the lower court's exclusion of the public during jury selection.

However, I disagree with my distinguished colleagues that the inquiry involves an analysis that is "equitable in nature." Pennsylvania Rule of Appellate Procedure 1925(b) provides that a failure to comply with the rule "may be considered by the appellate court as a waiver of all objections...." Our supreme court has discussed the waiver provision of Rule 1925(b), and has stated that the waiver provision "is properly invoked only where failure to file a statement or omission from a statement of issues raised on appeal defeats effective appellate review." *Commonwealth v. Silver*, 499 Pa. 228, 238, 452 A.2d 1328, 1333 (1982). *See also Commonwealth v. Crowley*, 259 Pa.Super.

204, 393 A.2d 789 (1978). Since defense counsel's objection and the court's ruling on it are in the record and were preserved for review, the question as to whether we should exercise our discretion is answered in appellant's favor. Any further analysis of the sequence of events in the lower court is in my view unnecessary.