STATE of Delaware, Plaintiff,

and

Gannett Company, Inc., Independent Newspapers, Inc., and Amy S. Rosenberg, Intervenors,

v.

Christie C. SHIPLEY, Defendant.

Superior Court of Delaware.

Submitted May 9, 1985.

Decided June 19, 1985.

Eugene M. Hall, State Pros., and Ferris W. Wharton, Deputy Atty. Gen., Wilmington & Dover, for plaintiff.

Richard G. Elliott, Jr., and John J. Schreppler, II, of Richards, Layton & Finger, Wilmington, for intervening Gannett Co., Inc.

John W. Noble, of Parkowski, Noble & Guerke, Dover, for intervening Independent Newspapers, Inc. and Amy S. Rosenberg.

James T. Vaughn, Jr., of Vaughn & Vaughn, Dover, and William H. Murphy, Jr., Baltimore, Md., for defendant.

RIDGELY, Judge.

Defendant Christie C. Shipley is charged with Murder in the First Degree, 11 *Del.C.* § 636(a)(1), and Possession of a Deadly Weapon During the Commission of a Felony, 11 *Del.C.* § 1447(a). Because the State has charged the defendant with a capital crime, the defendant is presently being held in custody without bail. Defendant has moved for a "proof positive hearing" pursuant to *Del.Const.* Art. I, § 12 [1] and 11

---

**1.** *Del.Const.*, Art. I, § 12 provides in pertinent part:

*Del.C.* § 2103 [2] to determine her right to bail. Defendant has also moved to exclude the public and the news media from this bail hearing for the purpose of safeguarding her Sixth Amendment right to a fair trial by an impartial jury.[3] Representatives of the news media, Gannett Company, Inc., Independent Newspapers, Inc., and Amy S. Rosenberg ("Intervenors") have been permitted to intervene for the purpose of joining with the State in opposing defendant's motion. Because the parties disagree on the appropriate legal standard to determine whether this hearing should be closed, a preliminary ruling that establishes the standard for motions for closure will be made by the Court.

Intervenors urge this Court to adopt a three-part test which would require that judicial proceedings remain open in the absence of a showing of "substantial probability" by evidence which is "clear and convincing" that (1) irreparable harm to defendant's right to a fair trial will result if the proceedings are not closed, (2) alternatives to closure do not exist which can adequately protect defendant's right to a fair trial, and (3) closure will be effective to protect against the perceived harm. Defendant, on the other hand, advocates closure of pretrial proceedings if the trial court is satisfied that there is a realistic likelihood of prejudice to a fair trial by an impartial jury as a result of adverse publicity, and that such prejudice cannot be overcome by resort to other methods.

The origins of these standards can be traced to the majority, dissenting, and concurring opinions in *Gannett Co. v. DePasquale,* 443 U.S. 368, 99 S.Ct. 2898, 61 L.Ed.2d 608 (1979). In *Gannett,* Justice Stewart, writing for the majority, upheld pretrial closure on a trial judge's conclusion that an open proceeding would pose a "reasonable probability of prejudice to these defendants." *Gannett* at 393, 99 S.Ct. at 2912. Justice Blackmun, joined by three other justices in the dissent, recommended a more stringent test, almost identical to that urged here by the Intervenors. Under the Blackmun test, proceedings will be open "unless a defendant carries his burden to demonstrate a strict and inescapable necessity for closure" in order to protect his fair trial right. *Gannett* at 443, 99 S.Ct. at 2937. The accused must show that there is a substantial probability that: (1) an open hearing will irreparably damage his fair trial right; (2) alternatives to closure will not adequately insure his right to a fair trial; and (3) closure will effectively protect his rights. *Gannett* at 441–442, 99 S.Ct. at 2936–2937. Justice Powell, in his concurring opinion, rejected the Blackmun test as too severe. He would have required that a defendant "make some showing that the fairness of his trial will likely be prejudiced by public access to the proceedings." *Gannett* at 401, 99 S.Ct. at 2916.

Several courts have since agreed with Justice Powell that the strict standard advocated by Intervenors is not a fair accommodation of a defendant's Sixth Amend-

"All prisoners shall be bailable by sufficient sureties, unless for capital offenses when the proof is positive or the presumption great;"

**2.** 11 *Del.C.* § 2103 provides as follows:

*"Persons charged with a capital crime.*
"(a) A capital crime shall not be bailable, and a person so charged shall be held in custody without bail until the charge be withdrawn, reduced or dismissed or until the court shall otherwise order after a trial which results in less than a conviction of a capital crime or except as provided in subsection (b) of this section.
"(b) The Superior Court may admit to bail a person charged with a capital crime if, after full

inquiry, the Superior Court shall determine that there is good ground to doubt the truth of the accusation, and the burden of demonstrating such doubt shall be on the accused."

**3.** Defendant has referred the Court to eleven newspaper articles already published regarding this case that include details of a "Macabre Find" due to the beheading, dismembering, and mutilation of the victim (who is alleged by the State to have been the husband of defendant), of efforts by the State to identify the victim by scientific and other means, and of defendant's arrest and not guilty pleas.

ment right to a fair trial. *See In Re Globe Newspaper Co.,* 1st Cir., 729 F.2d 47 (1984); *Application of Herald Co.,* 2nd Cir., 734 F.2d 93 (1984); *U.S. v. Chagra,* 5th Cir., 701 F.2d 354 (1983); *State v. Williams,* N.J.Supr., 93 N.J. 39, 459 A.2d 641 (1983); *Kearns-Tribune Corp. v. Lewis,* Utah Supr., 685 P.2d 515 (1984); *Lexington Herald-Leader Co. v. Meigs,* Kan.Supr., 660 S.W.2d 658 (1983).

The Judicial Conference of the United States also has adopted Justice Powell's standard. *Revised Report of the Judicial Conference Committee on the Operation of the Jury System on the "Free Press— Free Trial" Issue,* 87 F.R.D. 519, 534, 535 (1980). The Judicial Conference Advisory Committee on Federal Rules of Criminal Procedure followed Justice Powell's approach in proposing an amendment to the Federal Rules of Criminal Procedure. The Advisory Committee echoed Justice Powell's criticism of the Blackmun test as a rule so inflexible as to "prejudice defendant's rights and disserve society's interest in the fair and prompt disposition of criminal trials." *Preliminary Draft of Proposed Amendments to the Federal Rules of Criminal Procedure,* Rule 43.1, 91 F.R.D. 289, 372 (1981).

Nevertheless, cautious courts have adopted the Blackmun test. In *United States v. Brooklier,* 9th Cir., 685 F.2d 1162 (1982), the Ninth Circuit chose to adhere to the Blackmun standard because prudence counseled adherence to the strict standard until the U.S. Supreme Court resolved the issues of the proper standard and the proper allocation of the burden of proof. *Brooklier* at 1167. *See also United States v. Powers,* 8th Cir., 622 F.2d 317 (1980); *Iowa Freedom of Info. Council v. Wifvat,* Iowa Supr., 328 N.W.2d 920 (1983); *Commonwealth v. Johnson,* 309 Pa.Super. 367, Pa.Super., 455 A.2d 654 (1982); *Detroit Free Press v. Recorder's Court Judge,*

Mich.Supr., 409 Mich. 364, 294 N.W.2d 827 (1980). *Compare In Re Greensboro News Co.,* 4th Cir., 727 F.2d 1320 (1984) (Blackmun test adopted, but the court was "far from convinced this stringent test is required to justify closure"). Moreover, Intervenors have pointed to unreported precedent in both the Delaware Court of Common Pleas and this Court where the Blackmun test has been followed in the past.[4] However, in *VanArsdale v. State,* Del. Supr., 486 A.2d 1 (1984), the Delaware Supreme Court declined to review the propriety of the use of this standard for closure due to the failure of the defendant to show prejudice from the denial of his closure motion.

Ordinarily, the precedents cited by Intervenors adopting the Blackmun tests would be entitled to weight. However, this Court declines to follow them in view of the U.S. Supreme Court's holding in *Waller v. Georgia,* 467 U.S. 39, 104 S.Ct. 2210, 81 L.Ed.2d 31 (1984). In *Waller,* Justice Powell, writing for a unanimous Court, set forth guidelines for closure motions which are based on the general criteria found in *Press-Enterprise Co. v. Superior Court,* 464 U.S. 501, 104 S.Ct. 819, 78 L.Ed.2d 629 (1984) and which reiterate his original view expressed in *Gannett:*

> "(T)he party seeking to close the hearing must advance an overriding interest that is likely to be prejudiced, the closure must be no broader than necessary to protect that interest, the trial court must consider reasonable alternatives to closing the proceeding, and it must make findings adequate to support the closure."

*Waller,* 467 U.S. at ——, 104 S.Ct. at 2216, 81 L.Ed.2d at 39. The Court reads the *Waller* pronouncement as a rejection by the U.S. Supreme Court of the strict standard advanced by Intervenors and previ-

---

**4.** The Blackmun test has been substantially followed in *State v. Fensterer,* Del.Com.Pl., PH–171–15, Trader, J. (Nov. 5, 1981), *State v. Van Arsdale and Pregent,* Del.Com.Pl., PH–180–2, 3, 4, 5, Trader, J. (Jan. 26, 1982) and Del.Super., Cr.A. Nos. IK82–01–0073 through 0076, Bush, J. (June 9, 1982), *State v. Lovett,* Del.Super., Cr.A. Nos. S82–07–0022 through 0025, Tease, J. (Jan. 17, 1983).

ously utilized by this Court and the Court of Common Pleas.

Here the overriding interest is the defendant's right to a fair trial before an impartial jury.[5] *Richmond Newspapers, Inc. v. Virginia,* 448 U.S. 555, 564, 100 S.Ct. 2814, 2820, 65 L.Ed.2d 973 (1980). The word "likely" is equivalent to a "reasonable probability" or a "reasonable likelihood" standard. The party seeking closure has the burden of proof.

Even with a lesser burden of proof than that urged by Intervenors, the defendant's task is by no means easy. There is a strong presumption that both pretrial hearings and trials remain open.[6] *Waller v. Georgia, supra; Press-Enterprise Co. v. Superior Court, supra; Globe Newspaper Co. v. Superior Court,* 457 U.S. 596, 102 S.Ct. 2613, 73 L.Ed.2d 248 (1982); *Richmond Newspapers, Inc. v. Virginia, supra.* The difficulty of showing the likelihood of prejudice to a defendant's right to a fair trial and of showing the absence of reasonable alternatives to closure remains. Recognized methods to assure a fair trial in the face of pervasive pretrial publicity include: "(a) change of venue to a place less exposed to the intense publicity ...; (b) postponement of the trial to allow public attention to subside; (c) searching questions of prospective jurors ...; (d) the use of emphatic and clear instructions on the sworn duty of each juror to decide the issues only on evidence presented in open court." *Nebraska Press Ass'n v. Stuart,* 427 U.S. 539, 563–564, 96 S.Ct. 2791, 2804–2805, 49 L.Ed.2d 683 (1976). In view of the presumption of openness afforded the public and news media in criminal proceedings, closure is expected to be rare. *Waller,* 467 U.S. at ——, 104 S.Ct. at 2215, 81 L.Ed.2d at 38. *Compare Bar-Bench-Press Declaration of Delaware and Conference Constitution,* Part I, ¶ 1 at p. 1 (1978).[7]

At the hearing on the defendant's closure application, the Court will require offers of proof *in camera* to ensure that any potentially prejudicial material is not prematurely revealed before the merits of defendant's motion can be resolved. *See Globe Newspaper Co. v. Superior Court, supra,* 457 U.S. at 609 n. 25, 102 S.Ct. at 2621 n. 25; *State v. Williams, supra,* 459 A.2d at 659.

---

5. With regard to the right to "a speedy and public trial by an impartial jury", the U.S. Supreme Court said as long ago as 1866 that "[i]f ideas can be expressed in words and language has any meaning, this right—one of the most valuable in a free country—is preserved to everyone accused of crime ..." *Ex Parte Milligan,* 4 Wall. (71 U.S.) 2, 18 L.Ed. 281 (1866).

6. *United States v. Criden,* 3d Cir., 675 F.2d 550 (1982) contains a useful analysis of the importance to our democracy of a First Amendment right of access to court proceedings. The Court identifies at least six societal interests relied on by the *Richmond* court which favor open court proceedings: Access to criminal proceedings serves an "important 'educative' interest"; promotes fairness in the proceeding and the "per-

ception of fairness"; offers "a 'therapeutic ... outlet for community ... emotion' "; checks "corrupt practices" involving "secret bias or partiality"; "enhances the performance of all involved"; and "discourages perjury." *Criden* at 556 (quoting *Richmond Newspapers, Inc. v. Virginia, supra.*)

7. This *Declaration* provides in pertinent part:
"Courts are institutions established to enforce the law and protect individual rights. The public must know what takes place in the court system in order to exercise the responsibilities of citizenship. *Except in extraordinary circumstances,* court proceedings will take place in public and records of those proceedings will be available for public inspection." (emphasis added)