462 A.2d 1316

COMMONWEALTH of Pennsylvania

v.

Roger BUEHL.

Appeal of PHILADELPHIA NEWSPAPERS, INC.,
Intervenor, Appellant.

Superior Court of Pennsylvania.

Argued Jan. 18, 1983.

Filed June 24, 1983.

Petition for Allowance of Appeal Denied Dec. 27, 1983.

Katherine L. Hatton, Philadelphia, for appellant.

Ronald Thomas Williamson, Assistant District Attorney, Norristown, for Commonwealth, appellee.

Before SPAETH, CAVANAUGH and HOFFMAN, JJ.

SPAETH, Judge:

This appeal is from an order denying appellant's motion for access to a pretrial hearing and a copy of the transcript of the hearing. The order arises from the Commonwealth's prosecution of Roger Buehl for murder. The pretrial hearing was set for the day the case was called for trial, January 3, 1983, and at the opening of the hearing, Buehl's counsel moved that the hearing be closed. The lower court granted the motion at once, and on January 18 Buehl was convicted and sentenced to death. Appellant is the publisher of the Philadelphia Inquirer and the Philadelphia Daily News. We hold that before a trial court may order a pretrial hearing closed, there must be notice to the public; that if a representative of the public, such as the press, opposes closure, the court shall afford the representative an opportunity to be heard; that before ordering closure, the court shall consider alternatives to closure; and that if the court orders closure, it shall state on the record why it rejected those alternatives. Since the lower court did not comply with these requirements, we reverse.

As already mentioned, the pretrial hearing was set for the day the case was called for trial, January 3, 1983. The hearing convened at 10:37 a.m. The transcript states that in addition to the court, those present were the prosecutor, defense counsel, and the defendant, Roger Buehl. The

court instructed the clerk to swear the court reporter and the tipstaves, and after they were sworn, indicated that the prosecutor might proceed. Defense counsel then stated that he had "filed certain pre-trial motions" and that "because of the extensive pre-trial publicity that this trial has been given and because of the possible prejudice that may arise on the defendant's part if those motions are heard in the press, I would ask that the pretrial motions at this point be kept outside the presence of all persons except for those associated with the Court." N.T. 3. The prosecutor responded: "Your Honor, I have no objection. In fact, I think that such a ruling may assist in jury selection in this case." *Id.* The court responded:

Well, it occurs to me certainly that if this is rehashed in any way, the pre-trial motions and some of the evidence that's produced, in the papers prior to the selection of the jury that this certainly will at least keynote to those people who read the paper carefully the case and may recall some of the past publicity, which I don't think has been extensive up to this point. In an abundance of caution, therefore, I am going to hold the pre-trial motions in camera in accordance with an opinion rendered by the Supreme Court of Pennsylvania. The trial, of course, will be open to the public, but the pre-trial motions will be held outside the hearing of the press.

All right. I guess we're ready to proceed at this point. N.T. 4

The hearing then began.

After what must have been only a few moments, the direct examination of the first witness was interrupted—in its opinion the lower court states that "a member of the press burst past the guard at the back door of the court room," Slip op. at 2—and the following occurred.

UNIDENTIFIED VOICE: I have been instructed by my editor to request that the proceedings be stopped until we can get a lawyer here to make a motion to request that the press be permitted.

THE COURT: Well, I am not going to stop the proceedings. I have already made a ruling on that with regard to the other members of the press. It should be perfectly obvious to your editor as well as everyone else that I have to balance the public's right to know versus any prejudice to the picking of any future jury, and there is precedent in the Supreme Court of Pennsylvania which indicates that pre-trial matters can be heard outside the press and not in public view, and it's on that precedent that I am making this ruling.

UNIDENTIFIED VOICE: Just for the record, our attorney will be in touch with the Court.

N.T. 7

The member of the press was "then escorted from the courtroom and the hearing continued." Slip op. at 2.

During a recess in the hearing later the same day, appellant moved to intervene in the proceedings for the purpose of gaining access to the pretrial hearing and a transcript of the portion of the hearing from which appellant had been excluded. The lower court states in its opinion that it granted the motion to intervene but denied the motion seeking access to the hearing and the transcript. Slip op. at 2. Evidently no record was made of these proceedings. Appellant states in its brief that the court explained its ruling by stating that if the hearing were not closed, it would be impossible to impanel an impartial jury. Brief for Appellant at 3. This is consistent with the statement by the lower court in its opinion that "[h]ad the information considered at the suppression hearing become public before a jury was picked, it would have been nearly impossible to pick a fair and impartial jury in this County or any other County." Slip op. at 5.

–1–

■ Since the defendant has been convicted and sentenced, any concern that his right to a fair trial would be jeopardized were appellant or other representatives of the press permitted to attend and report on the pretrial hearing no longer exists; also, we are advised that the transcript

has now been released.  Supplemental Brief for Appellant at 2.  We must therefore consider whether this appeal is moot.

When a case is "capable of repetition, yet evading review," *Southern Pacific Terminal Co. v. ICC*, 219 U.S. 498, 515, 31 S.Ct. 279, 283, 55 L.Ed. 310 (1911), a court may hear it even though the issue it raises otherwise appears moot.  *Id.  See also In re Commitment of Ann S.*, 279 Pa.Super. 618, 621 n. 2, 421 A.2d 370, 372 n. 2 (1980); *Janet D. v. Carros*, 240 Pa.Super. 291, 310, 362 A.2d 1060, 1069 (1976).  Class actions aside, a case is "capable of repetition, yet evading review" when "(1) the challenged action [is] in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there [is] a reasonable expectation that the same complaining party [will] be subjected to the same action again."  *Weinstein v. Bradford*, 423 U.S. 147, 149, 96 S.Ct. 347, 348–49, 46 L.Ed.2d 350 (1975) (*per curiam*).  *See also Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 563, 100 S.Ct. 2814, 2820, 65 L.Ed.2d 973 (1980); *United States v. Criden*, 675 F.2d 550, 553–54 (3d Cir.1982).

■ Here, the pretrial hearing convened at 10:37 a.m. on January 3 and concluded at 4:17 p.m. the same day.  N.T. 3, 137.  The appeal from the lower court's order closing the hearing was orally argued before this court on January 18.  By then the defendant had been convicted and sentenced.  Thus "the challenged action"—the closure order—was "too short to be fully litigated prior to its cessation."  In addition, unless we decide what procedure the lower court should have followed, there is a reasonable expectation that appellant as the publisher of two newspapers will be subjected to similar closure orders again.  It is therefore apparent that this appeal is not moot.

–2–

■ In *Gannett Co. v. DePasquale*, 443 U.S. 368, 99 S.Ct. 2898, 61 L.Ed.2d 608 (1979), the United States Supreme Court held that the public has no right under the sixth

amendment to attend pretrial proceedings in a criminal case. That case is not controlling here, for appellant invokes not the sixth but the first amendment. Brief for Appellant at 5.[1] In *Richmond Newspapers, Inc. v. Virginia, supra,* the Court held that the public has the right under the first amendment to attend the *trial* in a criminal case; the Court did not consider the public's right to attend a *pretrial* proceeding. Therefore, that case is not controlling either. However, in *United States v. Criden, supra,* the Court of Appeals for the Third Circuit held that

> the same societal interests and structural arguments that mandated a first amendment right of access to criminal trials in *Richmond Newspapers* apply with equal force to pretrial criminal proceedings.

> 675 F.2d at 557.

We agree with, and adopt, this holding.

It is of course true that the Constitution contains no provisions explicitly guaranteeing access to criminal trials— much less, to pretrial criminal proceedings. For Justice REHNQUIST the absence of such a guarantee is decisive; he would require only that "both the prosecuting attorney and the defendant have consented to an order of closure approved by the judge." *Richmond Newspapers, Inc. v. Virginia, supra* 448 U.S. at 605, 100 S.Ct. at 2842 (REHNQUIST, J., dissenting). But for the other Justices—Justice POWELL did not participate in the decision—a right of access is implicit in the first amendment.

In an opinion joined by Justice WHITE and Justice STEVENS, the Chief Justice said:

> Notwithstanding the appropriate caution against reading into the Constitution rights not explicitly defined, the Court has acknowledged that certain unarticulated rights are implicit in enumerated guarantees. For example, the rights of association and of privacy, the right to be presumed innocent, and the right to be judged by a

1. Appellant also argues that Article 1, section 11, of the Pennsylvania Constitution ("All courts shall be open") guarantees its right to access to the hearing. Brief for Appellant at 8. We do not reach this issue.

standard of proof beyond a reasonable doubt in a criminal trial, as well as the right to travel, nowhere appears in the Constitution or Bill of Rights. Yet these important but unarticulated rights have nonetheless been found to share constitutional protection in common with explicit guarantees. [Footnote omitted.] The concerns expressed by Madison and others have thus been resolved; fundamental rights, even though not expressly guaranteed, have been recognized by the Court as indispensable to the enjoyment of rights explicitly defined.

We hold that the right to attend criminal trials [footnote omitted] is implicit in the guarantees of the First Amendment; without the freedom to attend such trials, which people have exercised for centuries, important aspects of freedom of speech and "of the press could be eviscerated," *Branzburg [v. Hayes]*, 408 U.S. [665], at 681 [92 S.Ct. 2646 at 2656, 33 L.Ed.2d 626 (1972) ].

*Id.* 448 U.S. at 579–80, 100 S.Ct. at 2829.

In an opinion joined by Justice MARSHALL, Justice BRENNAN expanded upon the nature of the important aspects of freedom of speech and of the press thus alluded to by the Chief Justice. "Publicizing trial proceedings aids accurate factfinding," *id.* at 596, 100 S.Ct. at 2838, thus "furthering the efforts of our judicial system to assure the criminal defendant a fair and accurate adjudication of guilt or innocence," *id.* at 593, 100 S.Ct. at 2836. But in addition, "the trial process serves other, broadly political, interests, and public access advances these obligations as well." *Id.* at 594, 100 S.Ct. at 2836. If our society is "to survive and flourish, its members must share the conviction that they are governed equitably." *Id.* Thus we must *see* that trials are fair. But "[s]ecrecy is profoundly inimical to this demonstrative purpose of the trial process. Open trials assure the public that procedural rights are respected, and that justice is afforded equally. Closed trials breed suspicion of prejudice and arbitrariness, which in turn spawns disrespect for the law. *Id.* at 595, 100 S.Ct. at 2837. Moreover, the trial "plays a pivotal role in the entire judicial

process ... [for] judges are not mere umpires, but, in their own sphere, lawmakers—a coordinate branch of *government* [footnote omitted; emphasis in original]. While individual cases turn upon the controversies between the parties, or involve particular prosecutions, court rulings impose official and practical consequences upon members of society at large." *Id.* Thus, by guarding against abuse, "public access to trials acts as an important check, akin in purpose to the other checks and balances that infuse our system of government." *Id.* at 596, 100 S.Ct. at 2838.

Our own Supreme Court and this court have made comparable statements of the importance of public access to the trial process. *See Commonwealth v. Contakos,* 499 Pa. 340, 453 A.2d 578 (1982) (new trial required where trial judge closed court room during testimony of key witness; full discussion of importance of public trials); *Commonwealth v. Johnson,* 309 Pa.Super. 367, 455 A.2d 654 (1982) (new trial required where trial judge closed court room during selection of jury). *And see* the recent decision by the New Jersey Supreme Court in *State v. Williams* and *State v. Koedatich,* 93 N.J. 39, 459 A.2d 641 (1983) (public has right under first amendment of United States Constitution and under parallel provision of New Jersey Constitution to attend all pretrial proceedings in criminal prosecutions).

As the Court of Appeals observed in *United States v. Criden, supra,* the reasoning of the majority of the court in *Richmond Newspapers* applies with equal force to trials and pretrial proceedings. Perhaps in fact it applies with greater force. For if the contraband, or the defendant's confession, or the identification testimony is suppressed, the prosecution may be over, but if not suppressed, conviction may be so certain that a guilty plea ensues. The decisive event in a prosecution is therefore often not the trial but the pretrial proceeding. If justice is to be done, and is to be seen as done, if the courts are to fulfill their proper role as one branch in our system of government, the public must have access both to the trial and to the pretrial proceedings.

■■■■■■■■■■■■■■■

-3-

■■■■ The public's right of access to criminal proceedings is not absolute but is qualified by the right of the accused to a fair trial. *Richmond Newspapers, supra* 448 U.S. at 581 n. 18, 100 S.Ct. at 2830 n. 18. *See also Globe Newspaper Company v. Superior Court,* 457 U.S. 596, 102 S.Ct. 2613, 73 L.Ed.2d 248 (1982); *Commonwealth v. Hayes,* 489 Pa. 419, 425, 414 A.2d 318, 321 *cert. denied,* 449 U.S. 992, 101 S.Ct. 528, 66 L.Ed.2d 289 (1980). If a proper balance of those rights is to be achieved, and the public's right of access effectively protected, the public, which is to say, a representative of the public, must be given notice and an opportunity to be heard before a pretrial proceeding is closed. As the Court of Appeals pointed out in *United States v. Criden, supra:*

... "Certainly, the failure to invite participation of the party seeking to exercise First Amendment rights ... substantially impairs the protection which the Amendment seeks to assure." *Carroll v. President of Princess Anne,* 393 U.S. 175, 181, 184, 89 S.Ct. 347, 351, 353, 21 L.Ed.2d 325 (1968)....

....

.... The interests of the public will not necessarily be represented either by defendants or prosecutors. The defendant's interests will obviously not coincide with that of the press. The Government, quite properly, has the duty to ensure a fair trial and has an obvious interest in securing a conviction that will withstand appeal; reversal of a conviction because of prejudicial publicity, though perhaps rare, poses a risk to a successful prosecution. We therefore cannot expect the Government to vindicate the public's first amendment rights. Nor should the trial judge be placed "in the position of sole guardian of first amendment interests even against the express wishes of both parties." Younger, The *Sheppard* Mandate Today: A Trial Judge's Perspective, 56 Neb.L.Rev. 1, 6–7 (1977). 675 F.2d at 557–58.

■ In *Criden* the court concluded that the Constitution, while requiring "some notice," does not "require [ ] any individual notice to the press or to the public" before the trial court entertains a motion to close a pretrial criminal proceeding. *Id.* at 558, 559. It was sufficient, the court held, if motions for closure were "docket[ed] ... sufficiently in advance of any hearing on or disposition of the closure motion to afford interested members of the public an opportunity to intervene and present their views to the court." *Id.* at 559 (footnote omitted).

Here, the lower court's error was not in failing to give notice to the public but in denying an opportunity to be heard. There was notice to the public. Although we do not know when, how, or by whom it was given, that it was given is shown by the fact, apparent on the record, that very shortly after the hearing started, a member of the press appeared and asked the lower court "that the proceedings be stopped until we can get a lawyer here to make a motion to request that the press be permitted." N.T. 7.[2] However, there was no opportunity to be heard. The court's response to the request for time to "get a lawyer here" was: "Well, I am not going to stop the proceedings. I have already made a ruling on that with regard to the members of the press." *Id.* The person who had made the request was "then escorted from the courtroom and the hearing continued." Slip op. at 2. Plainly, this response was insufficient "to vindicate the public's first amendment rights." *United States v. Criden, supra* at 558. The hearing had just started. No reason appears why the court

---

**2.** In these circumstances we think it unnecessary to prescribe what sort of notice to the public a lower court should give when presented with a motion for closure. The context of different motions will vary: they may be presented orally or in writing, in open court or in chambers, when a representative of the public is present and when one isn't, and so on. If a rule is to be promulgated prescribing the proper notice procedure, that must be done by the Supreme Court. Pa. Const. art. 5, § 10(c). *See also* 42 Pa.C.S.A. § 502; *Commonwealth v. Campana,* 455 Pa. 622, 314 A.2d 854 (1974). Pending such a rule—if there is to be one—we leave to the lower courts the decision as to what sort of notice is in the particular circumstances of the case appropriate.

could not have taken a brief recess to enable counsel to appear and argue against the motion for closure. In *Gannett v. DePasquale, supra,* Justice BLACKMUN, joined by three other Justices, after explaining in his concurring and dissenting opinion why it was not enough to hear from only the defendant and the prosecutor, said that "any person removed from a court should be given a reasonable opportunity to state his objections prior to the effectiveness of the [closure] order." 443 U.S. at 445–46, 99 S.Ct. at 2939. Similarly, Justice POWELL· in his concurring opinion in *Gannett* stated that "[u]pon timely objection to the granting of the motion, it is incumbent upon the trial court to afford those present a reasonable opportunity to be heard on the question whether the defendant is likely to be deprived of a fair trial if the press and public were permitted to remain in attendance." *Id.* at 401, 99 S.Ct. at 2916.[3]

–4–

The lower court also erred in failing to articulate, on the record and before ordering closure, its consideration of alternatives to closure. In *United States v. Criden, supra* at 560–61, the Court of Appeals has collected the authorities establishing "a fairly broad consensus that, before a court closes a pretrial criminal hearing, it must at least consider alternatives to closure and explicitly state its reasons on the record for rejecting such alternatives." *Id.* at 560. Among these authorities is the American Bar Association Standards

**3.** In its supplemental opinion, filed after this appeal was orally argued, the lower court responds to a question we asked during argument regarding what opportunity to be heard was afforded appellant. The court states that sometime in the day of the pretrial hearing—the court does not state at what stage of the hearing—it had a conference in chambers with counsel for two newspapers, including appellant, "and several reporters." Slip supp. op. at 1. Neither the prosecutor nor defense counsel was present, as they were "involved in the trial and the selection of the jury for that trial." *Id.* at 1–2. The court states that "[n]o effort was made to have this conference recorded and no request was made to this effect by [appellant]." *Id.* at 3. Although the court outlines the nature of the conference, in the absence of a record we are unable to determine to what extent the conference represented an opportunity to be heard rather than an explanation by the court of a ruling it had already made and was unwilling to disturb.

Relating to the Administration of Justice: Fair Trial and Free Press, Standard 8–3.2 (2d ed. 1980) (court may close only if it finds prejudicial effect of information to be disclosed "cannot be avoided by any reasonable alternative means"). *And see State v. Williams* and *State v. Koedatich, supra*, 459 A.2d at 659 (court must "disclose on the record its findings of fact and the basis for its conclusion as to closure."); *Petition of the Daily Item*, 310 Pa.Super. 222, 226, 456 A.2d 580, 582 (1983) (court must consider alternatives before closing preliminary hearing); Revised Free Press—Fair Trial Guidelines of the Judicial Conference of the United States—1980, 87 F.R.D. 525, 535 (1980) (court shall make specific findings for the record "that reasonable alternatives to closure will not adequately protect defendant's right to a fair trial"); Judicial Conference Advisory Committee on the Federal Rules of Criminal Procedure, Rule 43.1(b)(2) and Advisory Note (court must make findings for the record that the prejudicial effect "cannot be avoided by any reasonable alternative means" other than closure).

■ In *Criden* the court found it unnecessary to decide whether the Constitution requires the lower court to articulate on the record why alternatives to closure have been rejected. *Id.* at 561. We also find that decision unnecessary. Instead, we need only hold, and we do hold, that the lower court was obliged to comply with Standard 8–3.2 of the ABA Standards on Fair Trial and Free Press, *supra*. For other occasions on which either our Supreme Court or this court has required compliance with the ABA Standards, *see e.g., Reese v. Danforth*, 486 Pa. 479, 406 A.2d 735 (1979) (Standards for the Defense Function § 1.1—ethical responsibilities of public defenders); *Commonwealth v. Bailey*, 480 Pa. 329, 390 A.2d 166 (1978); (Standards for the Defense Function—§ 4.1—defense counsel's duty to investigate); *Commonwealth v. Gainor*, 289 Pa.Super. 190, 432 A.2d 1116 (1981) (same); *Commonwealth v. Neal*, 493 Pa. 335, 426 A.2d 576 (1981) (Function of the Trial Judge—impartiality at trial); *Commonwealth v. Knighton*, 490 Pa.

16, 415 A.2d 9 (1980) (Function of the Trial Judge—impartiality in imposing sentence); *Commonwealth v. Allen,* 280 Pa.Super. 599, 421 A.2d 1094 (1980) (Standards for Pleas of Guilty § 2.1—withdrawal of plea). *And cf. Commonwealth v. Riggins,* 474 Pa. 115, 377 A.2d 140 (1977); *Commonwealth v. Walters,* 287 Pa.Super. 53, 429 A.2d 716 (1981); *Commonwealth v. Wareham,* 259 Pa.Super. 527, 393 A.2d 951 (1978); ABA Standards *supra,* Sentencing Alternatives and Procedures § 5.6(ii) (lower court must articulate on record reasons for sentence).

Following the appeal to this court, the lower court filed an opinion explaining why it had granted the motion for closure. In the course of this opinion the court explains why it rejected a change of venue and sequestration as alternatives to closure. This opinion, however, cannot satisfy the court's obligation to articulate its reasons for ordering closure, for it comes too late. It is in essence an after-the-fact, *ex parte,* statement. If the public's first amendment right of access is to be effectively protected, the court must state *before* ordering closure why it considers alternatives to closure unsatisfactory. Only in that way will those who oppose closure be able to respond. Given a chance to respond, they may be able to persuade the court that it is mistaken, or they may be able to suggest an alternative not thought of by the court but that when thought of, is found to be satisfactory.

The necessity of an articulation by the court of its reasons for closure before ordering closure is illustrated by the present case. The lower court states in its opinion that "[a] change of venue would not have advanced the defendant's right to a fair trial," slip op. at 6; that "[n]o other trial procedure device [*i.e.,* other than closure] would have eliminated these prejudicial disclosures," *id.* at 8; that voir dire "confirmed the Court's suspicions that [not to order closure] would have made a fair and impartial trial impossible," *id.* at 9 n. 1; that "[n]either this Court, the defense, nor the Commonwealth, knew how long the suppression hearing

would take" and "[t]he cost of [sequestration] would have been astronomical," *id.* at 9. All of this may be true. But also, it may not be. Without any sort of record having been made we cannot appraise the accuracy of the lower court's statements. Nor can even the lower court know whether it struck the proper balance between the public's right of access to the pretrial hearing and the defendant's right to a fair trial. A court may never feel any assurance that it has decided an issue correctly until after it has heard both sides.

REVERSED.

CAVANAUGH, J., files a concurring statement.

CAVANAUGH, Judge, concurring:

I join the majority opinion but write separately only to add that in my view the "notice" that the court is considering closure of a pre-trial hearing may be as simple as a court's response to a motion for closure at the outset of a hearing. Our courts are burdened by a large number of pre-trial hearings and closure often is properly ordered for reasons having nothing to do with media coverage of the hearing. Notice should not be equated with notification and I think we must avoid any decision which unnecessarily enmeshes the trial courts in a procedural straightjacket which will inevitably cause further confusion and delay. In the great majority of cases there is no interest in opposing an order of closure, and in those where the public's right to know is being asserted, ordinary vigilance by its proponents will ensure an adequate opportunity to be heard. For the same reasons I would not require the court to articulate its reasons for closure prior to an order of closure, unless there has been some opposition to closure. Finally, I would add that it is my understanding that our reversal of the order below should not be read as in any way affecting the verdict below or any subsequent judgment of sentence thereon.