## CAPITAL CITIES MEDIA, INC., ET AL. v. TOOLE, JUDGE OF THE COURT OF COMMON PLEAS OF LUZERNE COUNTY

No. A–1070. Decided July 13, 1983

JUSTICE BRENNAN, Circuit Justice.

This is an application for an immediate stay of several orders entered by the Court of Common Pleas of Luzerne County, Pa., in connection with a homicide trial in that court, *Commonwealth* v. *Banks*, Criminal Cases Nos. 1290, 1506, 1507, 1508, 1519, 1520, 1524 of 1982, that had attracted a great deal of public interest. The specific orders in question were entered by respondent Judge Toole on June 3, 1983, after selection of the trial jury but before its sequestration.

In one order, respondent directed first that "[n]o person shall print or announce in any way the names or addresses of any juror," Order in Accordance with Pa. Rule Crim. Proc. 1111(c), June 3, 1983, ¶2 (hereinafter ¶2), and also that "[n]o person shall draw sketches, photographs, televise or video-tape any juror or jurors during their service in these proceedings . . . ," ¶6 (hereinafter ¶6). In a separate order, Judge Toole ordered that "[n]o one, except attorneys of record, their agents, court personnel, witnesses and jurors may handle exhibits except by Order of Court," Order Pursuant to Pa. Rule Crim. Proc. 326, June 3, 1983, ¶11 (hereinafter ¶11). The application for a stay was first presented to me on June 18, 1983, but I held it pending action by the Supreme Court of Pennsylvania on a substantially identical application for summary relief. On June 21, the jury returned a guilty verdict in the *Banks* case and was discharged; on June 30, the Supreme Court of Pennsylvania denied summary relief. Applicants immediately reapplied to me for a stay. An initial response was received by telegram on July 7, with a more complete response submitted on July 13.

In recent years, several Justices have had occasion to explain the role of a Circuit Justice in precisely this context, when a trial court has enjoined the press and other media from publication of information in connection with a criminal trial. Caution is the refrain of any Justice acting as Circuit Justice, but we have recognized the special importance of swift action to guard against the threat to First Amendment values posed by prior restraints. It is clear that even a short-lived "gag" order in a case of widespread concern to the community constitutes a substantial prior restraint and causes irreparable injury to First Amendment interests as long as it remains in effect. When it appears that there is a significant possibility that this Court would grant plenary review and reverse the lower court's decision, at least in part, a stay may issue. *Nebraska Press Assn.* v. *Stuart*, 423 U. S. 1327, 1330 (1975) (BLACKMUN, Circuit Justice); *Times-Picayune Publishing Corp.* v. *Schulingkamp*, 419 U. S.

1301, 1305 (1974) (POWELL, Circuit Justice). See also *Bonura* v. *CBS, Inc.*, 459 U. S. 1313 (1983) (WHITE, Circuit Justice).

I address first the ¶2 provision, which on its face permanently restrains publication of the names or addresses of any juror. Counsel for respondent has informed the Clerk of this Court that this order remains in effect, and that publication at this time of the name of a juror would subject the publisher to the possibility of being held in contempt of court. This order was entered by the court *sua sponte* and without a hearing or a record; neither the prosecution nor defendant has expressed any interest in it. Cf. *Gannett Co.* v. *DePasquale*, 443 U. S. 368 (1979). The jury was selected at *voir dire* proceedings begun prior to the issuance of this order, from which the press and public were not excluded, and at which the names of the prospective jurors were not kept confidential. Cf. *Press-Enterprise Co.* v. *Superior Court of California*, 4 Civil No. 27904 (Ct. App. Cal., 4th App. Dist., May 13, 1982), cert. granted, 459 U. S. 1169 (1983).

It hardly requires repetition that " '[a]ny system of prior restraints of expression comes to this Court bearing a heavy presumption against its constitutional validity,' " and that the State " 'carries a heavy burden of showing justification for the imposition of such a restraint.' " *New York Times Co.* v. *United States*, 403 U. S. 713, 714 (1971) *(per curiam)*. This Court has given plenary consideration to a number of state statutes and court orders issued thereunder restraining publication of information in connection with a criminal trial or restricting press access to a criminal trial for the purpose of preventing such publication. Just last Term, in *Globe Newspaper Co.* v. *Superior Court*, 457 U. S. 596 (1982), we held that the First and Fourteenth Amendments prohibited enforcement of a rule barring press and public access to criminal sex-offense trials during the testimony of minor victims. We adopted a familiar standard: "Where, as in the present case, the State attempts . . . to inhibit the disclosure of sensi-

tive information, it must be shown that the denial is necessitated by a compelling governmental interest, and is narrowly tailored to serve that interest." *Id.*, at 606–607; cf. *Smith* v. *Daily Mail Publishing Co.*, 443 U. S. 97 (1979).

I assume, for purposes of argument only, that the State has a compelling interest in keeping personal information about jurors confidential in an appropriate case, either to assure the defendant a fair trial or to protect the privacy of jurors. Cf. *Globe Newspaper, supra,* at 607; *Richmond Newspapers, Inc.* v. *Virginia,* 448 U. S. 555, 600 (1980) (Stewart, J., concurring in judgment). Our precedents make clear, however, that far more justification than appears on this record would be necessary to show that this categorical, permanent prohibition against publishing information already in the public record was "narrowly tailored to serve that interest," if indeed any justification would suffice to sustain a permanent order. Based on these precedents, I must conclude that if the Supreme Court of Pennsylvania sustained this order on its merits, four Justices of this Court would vote to grant review, and there would be a substantial prospect of reversal.

Insofar as the State's interest is in shielding jurors from pressure during the course of the trial, so as to ensure the defendant a fair trial, that interest becomes attenuated after the jury brings in its verdict and is discharged. Cf. *Gannett Co.* v. *DePasquale, supra,* at 400 (POWELL, J., concurring). As for the State's concern for the jurors' privacy, we have not permitted restrictions on the publication of information that would have been available to any member of the public who attended an open proceeding in a criminal trial, *Oklahoma Publishing Co.* v. *District Court,* 430 U. S. 308, 311–312 (1977) *(per curiam); Nebraska Press Assn.* v. *Stuart,* 427 U. S. 539, 568 (1976), even for the obviously sympathetic purpose of protecting the privacy of rape victims, *Globe Newspaper, supra,* at 607–609; *Cox Broadcasting Corp.* v. *Cohn,* 420 U. S. 469, 491–495 (1975). See also *Smith* v.

*Daily Mail Publishing Co., supra,* at 104: "If the information is lawfully obtained . . . the state may not punish its publication except when necessary to further an interest more substantial than is present here"—*i. e.,* protecting the privacy of an 11-year-old boy charged with a juvenile offense. In an extraordinary case such a restriction might be justified, but the justifications must be adduced on a case-by-case basis, with all interested parties given the opportunity to participate, and less restrictive alternatives must be adopted if feasible. *Globe Newspaper, supra,* at 608–609, and n. 25; *Richmond Newspapers, Inc.* v. *Virginia, supra,* at 580–581 (opinion of BURGER, C. J.); *Landmark Communications, Inc.* v. *Virginia,* 435 U. S. 829, 842–843 (1978). The ¶2 order was entered without a hearing, and without findings of fact that would justify it; respondent has suggested no concern specific to this case in support of his order. Accordingly, I grant applicants' request for a stay of the ¶2 provision.

It would be inappropriate for me to grant a stay of the ¶6 or ¶11 provisions. By its terms, the ¶6 provision applied only "during [the jurors'] service in these proceedings." Since the jury has been discharged, this particular provision can no longer have effect. It may be that such an order, although it had expired, could still receive appellate review in this Court under the "capable of repetition, yet evading review" doctrine, see *Nebraska Press Assn.,* 427 U. S., at 546–547, but there is no prospect of immediate injury to applicants before they can seek review of the order, so their application for a stay must be denied. As for the ¶11 provision, restricting access to exhibits, applicants have neither identified the exhibits to which they seek access, nor have they indicated that they have sought a court order permitting them access. The application for a stay of the ¶11 provision is denied without prejudice to its renewal in the event a request for access to exhibits is denied by the trial judge.

I shall issue an order accordingly.