487 A.2d 364

**COMMONWEALTH of Pennsylvania**

**v.**

**Mario GENOVESE**

**Appeal of NEP COMMUNICATIONS, INC., t/d/b/a WNEP–TV News**

Superior Court of Pennsylvania.

Argued Sept. 20, 1984.

Filed Jan. 9, 1985.

Bruce Morgan, Scranton, for appellant.

Charles W. Johns, Philadelphia, for Commonwealth, appellee.

Before WICKERSHAM, WIEAND and HESTER, JJ.

WIEAND, Judge:

Can a trial court temporarily restrain the news media from publishing, broadcasting or otherwise disseminating the names and addresses of jurors summoned or selected to hear a homicide case? NEP Communications, Inc., t/a WNEP–TV News (WNEP), the appellant herein, contends that the order entered during the trial of Mario Genovese was entered without cause and constituted an unconstitutional prior restraint upon its right to publish. We are constrained to agree; and, therefore, we reverse.

Mario Genovese, a Lackawanna County physician, was charged with murdering his wife. On the ninth day of trial in October, 1983, defense counsel became seriously ill and was hospitalized. The court declared a mistrial. Prior to retrial, the Court of Common Pleas granted a change of venire; but its order was reversed by the Supreme Court. Jury selection for the second trial commenced on September 4, 1984. The initial pool of venirepersons consisted of forty-three residents of Lackawanna County. Following general instructions to the prospective jurors, the trial judge said:

> [T]he media will appreciate that we have not released the name of any individual juror, and we order that you not use the names, for publication purposes, the names of any of these jurors during this time. Later on during the trial, the names of the jurors will be released.

The judge ordered further that "no person or any representative of the news media [shall] contact in any way any prospective juror or anyone who should be selected in this matter." Defense counsel requested sequestration of the jury, but his request was denied because of the expense that sequestration would entail. As voir dire examination of the prospective jurors proceeded, each stated his or her

name in open court, with members of the news media present.

Following a noon recess, the trial judge stated the reasons for his earlier order as follows:

> Our experience has been that in major cases too many people have no regard for justice. We want to protect jurors or their families from unnecessary harassment or calls at their home.... The Court feels [that] if they did not impose this type of a protective order, it would otherwise be necessary to sequester the jurors. Of course, we would be then responsible for a lot of additional costs which we feel is unnecessary. It's very expensive. In addition ..., it's a tremendous drain on the jurors themselves.

The trial judge observed further that voir dire would not be closed and that the news media would be permitted to receive the names of all the jurors so long as they did not print those names until permitted to do so by the court. Later, the court granted the request of a local television station to interview jurors who had been excused but admonished that neither the names of those excused jurors nor the interviews themselves could be published or broadcast until a jury panel had been selected. This was done "so as to avoid any contamination of people who [sic] we may call in as prospective jurors."

On the following morning, voir dire examination was suspended when WNEP requested the court to reconsider its order with respect to the names of jurors disclosed in open court. No evidence was received. With respect to the names of jurors who had been excused, the trial judge expressed a concern that if they were interviewed before a jury was empanelled they might contaminate other prospective jurors. With respect to jurors already selected and sworn, he said:

> I don't want jurors to be harassed at their residences which we've had in prior cases in this county; telephone

calls by survey organizations or people or some clown contacting them and harassing them in any way.

The trial judge summarized:

I take this measure because I find that there are compelling reasons to issue such a protective order. They are to obtain a fair trial for the Commonwealth and for the defendant. I find further that as an alternative, the only alternative that you suggested is the sequestration of a jury. I don't find that in these circumstances that to be a reasonable alternative in light of the cost that would be involved and in light of the inconvenience intended [sic] with sequestration. I further am fully aware of the fact and fully recognize the great community interest here involved in these proceedings. I fully recognize your rights to be in this courtroom and to object and to have your objections entertained. I think that's sufficient.

A written memorandum and amended order, dated September 5, was issued the following morning and stated that restraints on publication of names and contact with excused jurors were to be dissolved as soon as the trial jury had been empanelled.[1] With respect to the trial jurors and alternates empanelled, however, the restraint was to continue until the jury retired to deliberate upon its verdict.[2]

WNEP filed a notice of appeal to the Superior Court, petitioned for a supersedeas and moved for an expedited hearing. A supersedeas was denied, but an expedited hearing was granted.

The order of the trial court was a restraining order. It expressly restrained WNEP and other news media from publishing information obtained during a public trial. Pa.R. A.P. 501 provides that "any party who is aggrieved by an appealable order ... may appeal therefrom." WNEP was "aggrieved by the restraining order of the court and, therefore, was entitled to appeal." See also: Pa.R.A.P. 311(a)(4).

---

1. Jury selection was completed on September 6, at which time this part of the restraining order was terminated.

2. The trial judge refused a request on September 7 to reconsider his amended order.

The criminal trial has now been completed, and a verdict has been returned. The restraining order, therefore, has been dissolved by its own terms. Such an order is technically moot; the restraint on the news media has been terminated. Nevertheless, an appellate court may hear and decide an issue which is technically moot where it is "capable of repetition yet evading review." *Commonwealth v. Buehl,* 316 Pa.Super. 215, 220, 462 A.2d 1316, 1319 (1983), quoting *Southern Pacific Terminal Co. v. ICC,* 219 U.S. 498, 515, 31 S.Ct. 279, 283, 55 L.Ed. 310, 316 (1911). See also: *Commonwealth v. Joint Bargaining Committee for the Pennsylvania Social Services Union,* 484 Pa. 175, 179, 398 A.2d 1001, 1003 (1979); *Western Pennsylvania Socialist Workers 1982 Campaign v. Connecticut General Life Insurance Co.,* 335 Pa.Super. 493, 498, 485 A.2d 1, 3 (1984). "[A] case is 'capable of repetition, yet evading review when (1) the challenged action [is] in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there [is] a reasonable expectation that the same complaining party [will] be subjected to the same action again.'" *Commonwealth v. Buehl, supra,* 316 Pa.Superior Ct. at 220, 462 A.2d at 1319, quoting *Weinstein v. Bradford,* 423 U.S. 147, 149, 96 S.Ct. 347, 349, 46 L.Ed.2d 350, 353 (1975). See also: *Sherrer v. Lamb,* 319 Pa.Super. 290, 296, 466 A.2d 163, 166 (1983). It is conceded that the amended order restraining publication of jurors' names during voir dire and trial is in its duration too brief to be fully litigated prior to expiration. The time frame thereof is too narrow for full appellate review before it expires. See, e.g.: *Richmond Newspapers, Inc. v. Virginia,* 448 U.S. 555, 563, 100 S.Ct. 2814, 2820, 65 L.Ed.2d 973, 981 (1980) (more often than not criminal trials are of too short duration to outlive full appellate review). Cf. *In Re Remley,* 324 Pa.Super. 163, 166, 471 A.2d 514, 515 (1984) (90 days too short for review in involuntary commitment cases). It also would be reasonable to expect that WNEP will be subjected to similar restraints in the future. See: *Capital Cities Media, Inc. v. Toole,* 463 U.S. 1303, 103 S.Ct. 3524, 77 L.Ed.2d 1284 (1983) (per Brennan, J., as Circuit Justice) (where a similar prior

restraint was imposed upon the media in a murder case in neighboring Luzerne County).

" 'Any system of prior restraints of expression comes to this [or any] Court bearing a heavy presumption against its constitutional validity;' " the State " 'carries a heavy burden of showing justification for the imposition of such a restraint.' " *New York Times Co. v. United States,* 403 U.S. 713, 714, 91 S.Ct. 2140, 2141, 29 L.Ed.2d 822, 824–825 (1971) (per curiam), quoting *Organization for a Better Austin v. Keefe,* 402 U.S. 415, 419, 91 S.Ct. 1575, 1578, 29 L.Ed.2d 1, 5–6 (1971). See also: *Near v. Minnesota ex rel. Olson,* 283 U.S. 697, 51 S.Ct. 625, 75 L.Ed. 1357 (1931). As a general rule, the press is free to publish that which transpires during a public hearing and cannot be subjected to prior restraint with respect thereto. *Oklahoma Publishing Co. v. District Court,* 430 U.S. 308, 311, 97 S.Ct. 1045, 1047, 51 L.Ed.2d 355, 358 (1977). That which occurs in a public courtroom is public property. *Sheppard v. Maxwell,* 384 U.S. 333, 350, 86 S.Ct. 1507, 1516, 16 L.Ed.2d 600, 613 (1966); *Craig v. Harney,* 331 U.S. 367, 374, 67 S.Ct. 1249, 1254, 91 L.Ed. 1546, 1551 (1947). Absent a state interest of the highest order, the state may not prevent or punish the publication of truthful information of public significance which has been lawfully obtained. *Smith v. Daily Mail Publishing Co.,* 443 U.S. 97, 101–102, 99 S.Ct. 2667, 2670, 61 L.Ed.2d 399, 404 (1979). "[E]ven a short-lived 'gag' order in a case of widespread concern to the community constitutes a substantial prior restraint and causes irreparable injury to First Amendment interests as long as it remains in effect." *Capital Cities Media, Inc. v. Toole, supra* 463 U.S. at 1304, 103 S.Ct. at 3525, 77 L.Ed.2d at 1287. Thus, even a temporary delay in publication which causes no serious injury can be tolerated only under the most compelling circumstances. See: *Nebraska Press Association v. Stuart,* 427 U.S. 539, 560–561, 96 S.Ct. 2791, 2803, 49 L.Ed.2d 683, 698 (1976).

In an appropriate case, of course, the State may have a compelling interest to keep jury information confidential

in order to guarantee the defendant's right to a fair trial or the juror's right to privacy. However, "[a]s for the State's concern for the jurors' privacy, ... restrictions on the publication of information that would have been available to any member of the public who attended an open proceeding in a criminal trial" will not be permitted. *Capital Cities Media, Inc. v. Toole, supra* 463 U.S. at 1306, 103 S.Ct. at 3526, 77 L.Ed.2d at 1288.

Whether prior restraint is necessary to guarantee a fair trial requires an examination of the evidence before the trial court to determine (a) the nature and extent of the evil to be avoided, (b) whether other measures were likely to mitigate the effects of unrestrained publicity, and (c) how effective a restraining order was to prevent the threatened danger. *Nebraska Press Association v. Stuart, supra* 427 U.S. at 562, 96 S.Ct. at 2804, 49 L.Ed.2d at 699. A prior restraint, "one of the most extraordinary remedies known to our jurisprudence," *id.*, may not be based on assertion or conjecture but must be supported in all respects by evidence. A court must make its own inquiry into the imminence and magnitude of the danger said to flow from the particular utterance sought to be prohibited and then balance the character of the evil, as well as its likelihood, against the need for free and unfettered expression. *Landmark Communications, Inc. v. Virginia*, 435 U.S. 829, 842–843, 98 S.Ct. 1535, 1543, 56 L.Ed.2d 1, 13 (1978). Evidence must be presented during a hearing at which all parties are given an opportunity to participate. *Capital Cities Media, Inc. v. Toole*, 463 U.S. *supra* at 1307, 103 S.Ct. at 3527, 77 L.Ed.2d at 1289.

The Supreme Court of Iowa, in *Des Moines Register and Tribune Co. v. Osmundson*, 248 N.W.2d 493 (Iowa 1976) considered an order similar to that entered by the trial court in the instant case. There, the trial court had prohibited disclosure of the names of the jurors during a trial for the murder of a motorcycle gang member. The trial court had concluded, after hearing, that publicity "created a danger that influences might be brought to bear on jurors during

the trial if their identifies were known," and that "[s]equestration of the jury is not feasible or practical because of family and business commitments of the jurors who would have been available for selection" and because "the cost of sequestration ... is an expense which the Court in its discretion determines * * * is not desirable in this case." *Id.* at 498. The Iowa Supreme Court, having examined the evidence, found it "far short of the kind of showing ... necessary to justify a prior restraint." The court said:

> First, no evidence was adduced to show any danger existed that the trial jurors might be exposed to intimidation *during* trial. None of them indicated any such apprehension other than vague and undifferentiated disapprobation and suspicion of the Chosen Few motorcycle gang or of any group which rides motorcycles. To the limited extent that any apprehension was expressed during *voir dire* it was founded in unsupported although probably sincere speculation that a not guilty verdict might result in *post-verdict* harassment. However, there was simply no basis in the record for concluding any danger existed to the jurors or to the parties' rights to fair trial if the identities of trial jurors were known by the public prior to discharge of the jury after verdict. Therefore the first element under the *Stuart* test, demonstrating the substantiality of the harm sought to be avoided, was not satisfied.

*Id.* at 500 (emphasis in original).

■ Similarly, the record in the instant case does not support the trial court's conclusion that jurors would be harassed during trial if their names were revealed to the public. Only by conjecture and speculation can we surmise from this record that jurors would be at risk to outside intimidation. Similarly, there is no evidentiary basis on which to conclude that an order of prior restraint was necessary in order to insure the empanelling of an impartial jury. There was no evidence in this case that a fair trial would be impaired or the privacy of the individual jurors

invaded in the absence of an order restraining dissemination of the jurors' names.

Moreover, if it had been necessary to protect the jurors from harassment, the most effective way to insulate them during the trial would have been to sequester them. Neither the temporary inconvenience to the jurors and their families nor the cost of sequestration was an adequate reason to impose a prior restraint upon the freedom of the press to publish information obtained during a public trial. In order to justify a prior restraint there must be a finding, supported by record evidence, that alternative measures are inadequate to protect the jurors and guarantee a fair trial by an impartial jury. *Nebraska Press Association v. Stuart, supra,* 427 U.S. at 565, 96 S.Ct. at 2806, 49 L.Ed.2d at 701. In the instant case there was no such finding. Moreover, there was no evidence to support such a finding. Restraint of the media was neither the only nor the best restrictive means available to protect the jurors from harassment and to guarantee a fair trial.

■■■ Finally, the law is clear that "once a public hearing ha[s] been held, what transpire[s] there [cannot] be subject to prior restraint." *Nebraska Press Association v. Stuart, supra* at 568, 96 S.Ct. at 2807, 49 L.Ed.2d at 703. Anyone bent upon intimidating jurors in this case could readily have ascertained their identity by the simple expedient of being present in the courtroom during voir dire and jury selection. The court's order restraining the news media, although it may have placed limitations upon the public's right to know the identity of the jurors, was certainly not effective to protect them from intimidation. It is even more difficult to comprehend a good purpose to be achieved by an order restraining dissemination of the names of members of the panel who had been examined and excused from service. The mere disclosure of their names could have had no effect on the defendant's right to a fair trial.

We are constrained to hold, therefore, that the order preventing publication or other dissemination of the names

of jurors in this case was an invalid prior restraint which cannot be permitted to stand.

■ WNEP argues that the court's order prohibiting the media from interviewing jurors was also an unconstitutional prior restraint. The premise of this assertion, however, is flawed. Enjoining the press from interviewing or otherwise contacting jurors is *not* a prior restraint. "A prior restraint prevents publication of information or material in the possession of the press...." *Philadelphia Newspapers, Inc. v. Jerome*, 478 Pa. 484, 499, 387 A.2d 425, 432 (1978), *appeal dismissed*, 443 U.S. 913, 99 S.Ct. 3104, 61 L.Ed.2d 877 (1979). Court orders which prevent the media neither "from publishing any information in their possession [n]or from writing whatever they please[ ] ... [do] not constitute a prior restraint upon publication." *Id.*, 478 Pa. at 499–500, 387 A.2d at 433 (footnote omitted). Thus, to the extent that the amended order merely prevented WNEP temporarily from interviewing or contacting either prospective or empanelled jurors, it effected no prior restraint. Even so, the record is totally devoid of evidence that would have supported the entry of a restraining order against WNEP to prevent its conducting interviews with jurors. In the absence of some evidence to support what is quite clearly a restraining order, the order cannot stand. It cannot be presumed that WNEP intended to commit a criminal act or a civil wrong. Similarly, it was not shown that such a court order was necessary to protect the jurors or to guarantee a fair trial. Therefore, the order must be deemed an abuse of discretion and subject to reversal.

The order restraining the news media is reversed.

HESTER, J., files a dissenting statement.

HESTER, Judge, dissenting:

I respectfully dissent.