438

## Philadelphia Public School Notebook v. School District of Philadelphia

*David D. Lapp,* for plaintiff.
*Kara H. Goodchild* and *Miles H. Shore,* for defendant.

FOX, *J.,* March 2, 2011—The Philadelphia Public School Notebook, ("Notebook") appeals the Office of Open Record's ("OOR"), decision of the January 20, 2010 whereby the OOR dismissed as moot Notebook's appeal of the Philadelphia School District's ("District") denial of access to certain resolutions presented at the September 23, 2009 planning meeting of the School Reform Commission ("SRC") which had been requested

by the Notebook pursuant to Pennsylvania's Right to Know Law ("RTKL"), 65 P.S. § 67.101 et seq. After reviewing briefs and hearing oral argument, this court grants the Notebook's appeal and reverses the OOR.

## FACTS AND PROCEDURAL HISTORY

The facts of this case are not in dispute. The Notebook is a non-profit news service devoted to reporting on the Philadelphia public schools. On October 7, 2009, Paul Socolar, editor of the Notebook, submitted a request for documents pursuant to the RTKL. Specifically, the request was for "copies of the following full resolutions that were presented to a quorum of the SRC at the September 23, 2009 commission meeting: A-16, A-17, A-18, A-19, B-14, [and] B-15."

The SRC holds two regularly scheduled public meetings per month. The first is designated by the SRC as a "planning" meeting, and is held on the second week of every month. The "planning meeting" is defined by the SRC as a meeting at which no formal action is taken, but where individual commissioners review and deliberate on resolutions submitted by the school district in anticipation of taking a formal action at a later date. Roughly one to two weeks after the "planning" meeting, the SRC holds a "voting" meeting, at which formal action is taken by commissioners and resolutions voted upon. On September 23, 2009 the SRC held a monthly "planning" meeting attended by Paul Socolar. At this meeting, the district presented resolutions to the SRC "for review prior to formal action being taken." Sometime between this "planning" meeting and the scheduled September 30th "voting" meeting, the district withdrew from consideration resolutions A-16, A-17, A-18, A-19, B-14, and B-15

("Resolutions"). As a result, the resolutions were not voted on at the September 30, 2009 "voting" meeting.

On October 7, 2009, the Notebook filed its request under the RTKL. Two days later, on October 9, the district responded that the request required legal review and an answer would not be forthcoming until on or before November 9. Subsequently, the district reinstated the six proposals at issue, for passage at the SRC's October 21 "voting" meeting. All six resolutions were duly passed. On November 4, 2009, the district denied the Notebook's request via letter. The district took the position that full texts of the six resolutions from the September 23 "planning" meeting were "internal predecisional deliberations of an agency"; and were "draft[s] of a...resolution" and thus exempt from disclosure under the RTKL. (See district's letter)

Notebook appealed the district's denial to the OOR. The OOR denied Notebook's appeal and found that since the text of the resolutions were ultimately passed at the October 21 "voting" meeting, Notebook had in fact received the information it sought and therefore its claim was now moot. Notebook appealed the OOR's decision to this court.

## DISCUSSION

As a preliminary matter this appeal presents two separate issues: 1) whether the district's eventual disclosure of the text of the resolutions rendered Notebook's appeal to the OOR moot, and, if not, 2) whether the RTKL required the district to disclose the full text of the six resolutions at issue as presented at the September 23 "planning" meeting.

## I. *Mootness*

This matter is not moot because it falls under an exception to the mootness doctrine. Generally, moot cases are not justiciable in Pennsylvania. *Pap's A.M. v. City of Erie,* 571 Pa. 375, 388, 812 A.2d 591, 599 (Pa. 2002); Pa.R.A.P. 1972(4). An issue is moot when there is no longer an actual controversy between the parties sufficient to "affect[ ] another in a concrete manner so as to provide a factual predicate for reasoned adjudication." *Mistich v. Pa. Bd. of Prob. and Parole,* 863 A.2d 116, 119 (Pa. Commw. 2004). Here, the parties do not dispute that, once the district disclosed the full text of the six resolutions at issue, there was no longer a sufficient controversy. However, Pennsylvania recognizes an exception to the mootness doctrine when "the conduct complained of is capable of repetition yet likely to evade review." *Musheno v. Dep't of Pub. Welfare,* 829 A.2d 1228 (Pa. Commw. 2003). Following the analogous federal standard, Pennsylvania courts have held that an issue is "capable of repetition yet likely to evade review" when "(1) the challenged action [is] in its duration too short to be fully litigated prior to its cessation or expiration; and (2) there [is] a reasonable expectation that the same complaining party [will] be subjected to the same action again." *Com. v. Buehl,* 462 A.2d 1316, 1319 (Pa. Super. 1983) (quoting *Weinstein v. Bradford,* 423 U.S. 147, 149 (1975). This is precisely the situation before this court.

The first element of the exception is met because of the manner in which the district and SRC conduct their meetings. Here, Notebook is seeking the full text of "planning" meeting resolutions[1]. Since resolutions

---

1. There is no dispute over whether notebook is entitled to resolutions

are generally proposed and considered at a "planning" meeting which precedes the "voting" meeting by one to two weeks, there is plainly not enough time to litigate the issue between the time resolutions are proposed and voted on. The district argues that since it is willing to disclose the text of the resolutions voted upon, and that the text is the same as the text considered at the planning meeting, Notebook can wait until the voting meeting to receive the resolutions. This court does not agree. It is unclear from the record whether the resolution texts as voted upon differ from the text of the resolutions submitted at the planning meeting. Further, in this case the resolutions were withdrawn between the "planning" meeting and "voting" meeting. Notebook's sole purpose is to report to the public about the school district. Notebook's purpose for requesting access to the text of the proposed resolutions submitted at planning meetings is to have them prior to the actual vote. The one or two week duration between the "planning meeting" and "voting meeting" is too short a duration for this issue to be litigated before its cessation. The first element of the exception is met. The second element of the mootness exception is met because there is a reasonable expectation that notebook will request the text of planning meeting resolutions in the future. While there are few Pennsylvania cases which explicitly discuss what constitutes a "reasonable expectation that the same complaining party [will] be subjected to the same action again," analogous federal cases provide some guidance. *Buehl*, 462 A.2d at 1319 (looking to federal precedent when interpreting Pennsylvania mootness doctrine). In *Globe Newspaper Co. v. Superior Court for Norfolk County,* 457 U.S.596 (1982), a newspaper challenged a court order

---

voted on at the "voting" meetings.

excluding the press from a murder trial. The court order expired when the murder trial ended, and the controversy did not reach the court until roughly three years after the trial had ended. *Id.* While the active dispute between the parties ended with the trial, the court held that the case was justiciable because there was a reasonable expectation that the plaintiff, being a newspaper whose purpose it was to gather information for the public, would wish to attend a murder trial in the future and would be excluded therefrom. *Id.* at 603-604; see also *Com. v. Genovese*, 487 A.2d 364, 366 (Pa. Super. 1985) (finding a reasonable expectation that news media outlet would seek access to similar public information in the future). Similarly, it is reasonable to expect that Notebook, analogous to a media outlet, with its very purpose to gather information about the District and SRC proceedings, will again want access to the text of proposed resolutions prior to the voting meeting.

The district argues that there is no reasonable expectation that this issue will recur because it is "highly unlikely" that the district will again withdraw proposed resolutions after considering them at a planning meeting. This court disagrees. The gravamen of Notebook's claim is that the district violated the RTKL by refusing to disclose the full text of resolutions proposed at SRC "planning" meetings. While the district's subsequent withdrawal of those proposed resolutions may have provided the actual impetus for notebook to seek their disclosure, this is irrelevant to Notebook's legal claim. Notebook might have any number of reasons to request the texts of the "planning" meeting resolutions rather than wait for the "voting" meeting. For example, it might request the "planning" meeting resolutions to ensure that they were the same or different from the "voting" meeting proposals;

or to allow the public time to consider the actual proposed resolution before it is voted upon; or simply because they want to be able to timely publish resolutions considered by the SRC. In all cases the legal claim would be identical. The district's withdrawal of the resolutions was not the circumstances for which there must be a reasonable expectation of recurrence. Notebook is reasonably likely to request the text of "planning" meeting resolutions in the future, and the short interval between "planning" meetings and "voting" meetings precludes full litigation of the issue. Notebook's claim falls within an exception to the mootness doctrine.

## II. *RTKL Exemption*

Notebook is entitled to the full text of resolutions proposed at SRC "planning" meetings because such resolutions are not "drafts" and therefore do not fall within the "predecisional deliberations" exemption in the RTKL. The RTKL requires that agencies like the district "provide public records." 65 P.S. § 67.301. Exempted from the requirement are "draft[s] of a...resolution" and any "record which reflects...[t]he internal, predecisional deliberations between agency members." 65 P.S. § 67.708(b)(9); 65 P.S. § 708(b)(10)(i)(A). There is an exception to this exemption however: predecisional deliberations are not exempt, if the record in question is "presented to a quorum for deliberation" pursuant to the Sunshine Act. 65 P.S. § 708(b)(10)(ii). The district argues that the resolutions considered at "planning" meetings are both "drafts" and "predecisional deliberations" and therefore exempt from the requirement to disclose. This court does not agree.

The resolutions at issue are not drafts within the meaning of 65 P.S. §67.708(b)(9), which are exempt

from the RTKL and are defined as "the draft of a bill, resolution, regulation, statement of policy, management directive, ordinance or amendment thereto prepared by or for an agency." *Id.* The district claims that because the resolutions were withdrawn from consideration prior to any formal action, the resolutions were drafts. The district claims that a document "subject to change or withdrawal" is a draft, and that a proposed resolution ceases to be a draft only when it is put up before the SRC for a final vote. This court does not agree. Most official documents go through some process of revision, and some documents — such as statutes — will always be susceptible of change or amendment. At some point however, any draft of an official document crosses a threshold and is no longer intended for "further or additional writing," even though there is still some possibility that the document will still be changed or appended. *In re Estate of Shelley,* 950 A.2d 1021,1026 (Pa. Super. 2008). Here, the threshold is the point at which a resolution is proposed to the SRC at a "planning" meeting. It is at this point that the district, who is the originator of the resolutions, intends for the SRC to act on them. While the SRC may still alter the text of the resolutions before they are voted upon, the district has, by proposing them, indicated that it is satisfied with the form of the resolutions as drafted. Additionally, under the district's argument, all documents hypothetically susceptible to alteration or emendation would be categorically exempt under the RTKL. Many kinds of documents, including minutes of meetings or reports, can be changed or amended at any time. The legislature clearly did not intend all of these type documents to be shielded from public view. For these reasons, the district's claim must fail. The resolutions are not drafts under the RTKL.

The resolutions also do not fall under the "predecisional deliberations" exemption of the RTKL. The district argues simultaneously that the resolutions are part of "predecisional deliberations" exempt from the RTKL under 65 P.S. § 708(b)(10)(i)(A); but also claims that they were not "presented to a quorum for deliberation" under 65 P.S. § 708(b)(10)(ii). This argument is unpersuasive. Even if this court accepts the district's argument that the resolutions are predecisional deliberations under 65 P.S. § 708(b)(10)(i)(A), it is not in dispute that the resolutions at issue were submitted for consideration by the SRC at a public meeting held pursuant to the Sunshine Act. Therefore, the proposals would fall under the exception to the exemption under 65 P.S. § 708(b)(10)(ii).

The district tries to bolster its argument by urging that the word "deliberation" has a different, more restrictive meaning when used in the "presented to a quorum for deliberation" exception to the exemption under 65 P.S. § 708(b)(10)(ii) than it does in the exemption. In support of this, the district cites case law which draws a distinction between "deliberations" and "informational discussions." *Sovich v. Shaughnessy*, 705 A.2d 942, 945 (Pa. Commw. 1998). SRC "planning" meetings, the district argues, are mere "informational discussions" because no vote takes place at the conclusion of the meeting.

This court does not agree. While Pennsylvania courts have drawn this distinction when determining whether or not an agency can exclude the public from agency proceedings under the Sunshine Act, the question here involves interpretation of the word "deliberation" as used in the RTKL and not the Sunshine Act. There is no good reason to presume that the legislature, using the word "deliberation" twice within the same subsection of

the same statute, intended that the word have a different meaning each time.

Even if this court were to accept that planning meetings were "deliberations" under 65 P.S. § 708(b)(10)(i)(A) but not necessarily "deliberations" under 65 P.S. § 708(b)(10)(ii), the district's argument would still be unpersuasive. The OOR has held that only proceedings held for the purpose of making a decision are "deliberative" within the meaning of 65 P.S. § 708(b)(10)(ii). *Smith v. Quakertown Cmty. Sch. Dist.*, No. AP 2009-0256 at 7-8 (May 4, 2009) (holding that a meeting is deliberative when it is "for the purpose of rendering a decision"). The district believes that, because no decision was made at the "planning" meeting, the "planning" meeting cannot have been "deliberative." It seems apparent however, that although no vote was taken at the planning meeting, the SRC was considering resolutions "for the purpose of rendering a decision" at the subsequent "voting" meeting. The mere fact that the SRC "votes" at a different meeting than a meeting wherein it considers and discusses proposals is a procedural technicality, and it does not somehow transmute the "planning" meetings into the kind of informal discussion that the district claims are not "deliberative" under 65 P.S. §708(b)(10)(ii). The SRC's bifurcated meeting structure is not a totem by which it can ward off the influence of the RTKL. The district's argument must fail. Therefore, for the foregoing reasons, this court enters the following order.

## ORDER

And now, March 2, 2011, this court reverses the OOR's decision of January 10, 2010.