IN THE COMMONWEALTH COURT OF PENNSYLVANIA

James Gray                          :
                                    :
        v.                          :   No. 800 C.D. 2021
                                    :
Philadelphia District Attorney's    :
Office,                             :
              Appellant             :   Submitted:  December 4, 2023

BEFORE:    HONORABLE RENÉE COHN JUBELIRER, President Judge
           HONORABLE CHRISTINE FIZZANO CANNON, Judge
           HONORABLE ELLEN CEISLER, Judge

OPINION
BY JUDGE CEISLER                              FILED:  February 22, 2024

The Philadelphia District Attorney's Office (DAO) appeals from a June 2, 2021 Order of the Court of Common Pleas of Philadelphia County (Trial Court) affirming a Final Determination by the Pennsylvania Office of Open Records (OOR) ordering the DAO to release records requested by James Gray (Requester) pursuant to the Right-to-Know Law (RTKL).[1]  Requester originally sought the release of six sets of records purportedly in the DAO's custody.  Of these, Requester has withdrawn his request for four, and stated that his request for a fifth has been satisfied by records already released.  The Trial Court nonetheless directed the DAO to comply with the original request in its entirety.  The DAO argues on appeal that the request has been mooted with respect to the five items no longer sought by Requester, and further argues that the only part of the request still in controversy calls for a record that does not exist.   After review, we reverse the Trial Court's order.

---

[1] Act of February 14, 2008, P.L. 6, 65 P.S. §§ 67.101-67.3104.

# I. Background

Requester, an inmate at the State Correctional Institution-Mahanoy, submitted his original request to the DAO on July 10, 2020, seeking the following:

1. [A] complete record of the [DAO's] publicly announcing [of] the existence and release date of the racially discriminatory jury selection training tape by [former] Assistant District Attorney Jack McMahon [McMahon Tape].[2]

2. [A] complete record of all news/press release letters, e-mails, or other records of communication notifying news media about the existence and release of the "McMahon Tape."

3. [A] complete record listing all individuals [who] and/or agencies [that] received a copy of the "McMahon Tape" or transcript of the same from the [DAO] (i.e., attorneys, defendants, prisons, jails, etc.).

4. [A] complete record or official letter of notification sent to attorneys, criminal defenders, and/or other individuals regarding the existence and release of the McMahon [T]ape by the [DAO].

5. [A] complete record listing the names and titles of all persons responsible for distributing the McMahon [T]ape and/or notifying individuals about the existence and release of the [T]ape.

6. [A] complete record of all internal memos, general release information regarding the existence, release, distribution and contents of the McMahon [T]ape and transcript of the same generated by the [DAO].

---

[2] Requester was referring to a 1987 videorecording in which former Philadelphia Assistant District Attorney (ADA) Jack McMahon conducted a training session for the DAO on jury selection. Therein, McMahon, who served under District Attorney Ronald D. Castille, offered "various racial and gender stereotypes . . . as reasons to discriminate in the selection of jurors." *Commonwealth v. Basemore*, 744 A.2d 717, 729 (Pa. 2000). District Attorney Lynne Abraham, Castille's successor, released the McMahon Tape in 1997 to the attorneys of individuals whom McMahon had prosecuted before juries. *Commonwealth v. Cook*, 952 A.2d 594, 601 (Pa. 2008). In his Brief to this Court, Requester notes that he was prosecuted by McMahon in the year following the recording of the McMahon Tape, convicted of first-degree murder, and sentenced to life imprisonment without parole. Appellee's Br. at 6.

2

Reproduced Record (R.R.) at 5a. After invoking a 30-day extension to respond pursuant to Section 902 of the RTKL,[3] the DAO informed Requester on August 10, 2020 that his request was denied. *Id.* at 8a. In its letter to Requester, the DAO explained that it was "unable to locate" records responsive to any of the six parts of the request. *Id.*

Requester timely filed an appeal to OOR on September 1, 2020. *Id.* at 10a. Therein, Requester argued that the absence of responsive records was highly improbable, given that the McMahon Tape received ample media attention after its 1997 release and led to extensive litigation. *Id.* at 19a-20a. Requester also cited several appellate cases in which persons prosecuted by McMahon were said to be notified of the McMahon Tape's existence and argued that the DAO should be able to find responsive records related to those cases. *Id.* at 21a. Additionally, Requester argued that the DAO's failure to supply him with a copy of the McMahon Tape or notify him or his attorney of its existence violated his civil rights given that those other individuals were provided with copies of the Tape. *Id.* at 21a-22a.

In its defense, the DAO submitted a September 14, 2020 statement by acting RTKL compliance officer, ADA Robbins, attesting that six department supervisors "in the best position to know if their units possess any responsive records" were asked whether any of the requested records were kept;[4] none of the supervisors were aware of any responsive records. *Id.* at 47a. ADA Robbins further asserted that the

---

[3] Under certain circumstances, Section 902 permits an agency to extend its 5-day response time to a right-to-know request by 30 days, with written notice to the requester. 65 P.S. § 67.902.

[4] ADA Robbins stated that the DAO officials contacted included Jane Roh, its Communications Director; Erica Rebstock, Supervisor of its Major Trials Unit; Nancy Winkelman, Supervisor of its Law Division; Paul George, Assistant Supervisor of its Law Division; Tracey Kavanaugh, Supervisor of its Post-Conviction Relief Act Unit; and Lawrence Goode, Supervisor of its Appeals Unit. R.R. at 47a.

DAO had no practical means of searching for responsive records, as its case management system only permitted searches by a defendant name or identifying number, a docket number, a district control number, or the name of some victims or witnesses. *Id.* at 47a. Thus, an adequate search would entail looking manually through "thousands of boxes of materials" in an off-site storage facility, "in the hopes of finding a few responsive documents." *Id.* In an accompanying letter brief, the DAO asserted that any potentially responsive documents that may exist would be exempt from disclosure pursuant to the RTKL's exception for criminal investigative information.[5]

In correspondence dated September 28, 2020, OOR asked the DAO to clarify whether it ever initiated a search of documents in its off-site storage facility, and whether potentially responsive records have been destroyed pursuant to the DAO's record retention policies. *Id.* at 58a. In a second attestation, dated September 29, 2020, ADA Robbins explained that the only documents stored off-site are trial files, which have not been digitized; thus, searching those files would require retrieving "every file from off-site storage." *Id.* at 62a. Regarding other categories of relevant documents, such as internal memos or press releases, ADA Robbins stated that the DAO had no policy requiring their retention. *Id.*

On October 1, 2020, OOR issued a final determination granting Requester's appeal. *Id.* at 73a. Therein, OOR explained that, because no search of the files stored off-site was conducted, "the [DAO] has not met its burden to establish that it has completed a good faith search for the requested records." *Id.* at 72a. OOR

---

[5] Section 708(b)(16) of the RTKL exempts from public access any "record of an agency relating to or resulting from a criminal investigation," including "[c]omplaints of potential criminal conduct other than a private criminal complaint" and "[i]nvestigative materials, notes, correspondence, videos and reports." 65 P.S. § 67.708(b)(16).

4

further determined that the original request was sufficiently specific to allow a good-faith search for responsive records. *Id.* at 71a. The "year of creation and year of the release of the [McMahon] Tape" themselves allowed for a sufficiently concise search, OOR explained. *Id.* at 72a. OOR also rejected the DAO's assertion that extant documents would be exempt from disclosure, stating that the DAO had failed to meet its burden of proof that the records "would in any way be related to a criminal investigation, other than that they may be contained within a 'trial file.'" *Id.* at 73a.

The DAO filed a notice of appeal in the Trial Court on October 30, 2020, which essentially reasserted the arguments made before OOR. *Id.* at 77a-105a. In a supporting brief, the DAO stated that it searched the trial files from the cases cited by Requester. *Id.* at 96a. That search yielded a copy of a letter sent to counsel representing William Basemore, who was prosecuted by the DAO and convicted in 1988 of first-degree murder and other crimes, notifying him of the release of the McMahon Tape.[6] *See id.* at 106a. The DAO argued that the Trial Court should therefore vacate OOR's order with regard to Item 4. *Id.* at 96a. Attached as exhibits were a copy of the notification letter, along with a transcript of the McMahon Tape. *See id.* at 106a, 110a. Requester filed a brief in response, in which he stated the following:

> For the purposes of this appeal, [Requester] will only address and confine his argument to Item 3 of his original RTKL request. [Requester] respectfully withdraws his request for records at Items 1-2, & 5-6. Further, in light of the "good-faith effort to provide records" by the DAO, the [request] at Item 4 has been satisfied.

---

[6] Basemore later appealed his conviction and sentence, arguing, *inter alia*, that the McMahon Tape was evidence that his constitutional rights had been violated during his prosecution. *See Basemore*, 744 A.2d at 727.

5

*Id.* at 185a. Accordingly, Requester only asked the Trial Court to order the release the record requested at Item 3: a "complete record listing all individuals and/or agencies who received a copy" of the McMahon Tape. *Id.* at 187a.

The Trial Court held oral arguments via teleconference on May 5, 2021, during which the parties largely reiterated the arguments advanced in their briefs. *See* Suppl. Record, Hr'g Tr., 5/5/2021. On June 2, 2021, the Trial Court issued an order affirming OOR's Final Determination without an accompanying opinion. *Id.* at 208a. The DAO timely filed an appeal to this Court on July 2, 2021. *Id.* at 209a.

In an opinion submitted to this Court pursuant to Pa.R.A.P. 1925(a),[7] the Trial Court explains that Requester's withdrawal of Items 1, 2, 4, 5, and 6 was "ineffective," as requests may not be modified on appeal. DAO's Br., App. A, Trial Ct. Op., 9/7/2021, at 4. The Trial Court also rejects the assertion that the request was insufficiently specific, as Requester provided a clearly defined subject matter, scope, and timeframe of relevant documents. *Id.* at 8 (citing *Off. of the Dist. Att'y of Phila. v. Bagwell*, 155 A.3d 1119, 1142-1143 (Pa. Cmwlth. 2017)). Furthermore, the Trial Court explains that the DAO failed to meet its burden of proving that responsive documents did not exist, reasoning that "not being aware of any responsive documents versus no responsive documents existing are two different scenarios." *Id.* at 7. The Trial Court expresses incredulity that "the DAO [could], in good faith, assert that no responsive records exist . . . without undertaking specific searches of areas where those records and documents might be found and providing the Court with evidence of these efforts." *Id.* Lastly, the Trial Court explains that the DAO had not met its burden of proof that responsive records were exempt,

---

[7] Pa.R.A.P. 1925(a) provides that, upon the receipt of a notice of appeal, "the judge who entered the order giving rise to the notice of appeal, if the reasons for the order do not already appear of record, shall ... file of record at least a brief opinion of the reasons for the order."

6

referring to its written attestations as "conclusory" and lacking in supporting evidence. *Id*. at 13 (citing *Bagwell*, 155 A.3d at 1129).

## II. Issues

On appeal,[8] the DAO argues that Requester's appeal to OOR was rendered "largely moot" by his withdrawal of five of the six items in his request. The DAO further argues that the Trial Court lacked the authority to order the release of Items 3 and 5, which, in the DAO's view, "do not exist." DAO's Br. at 20.

## III. Discussion

### A. Partial Withdrawal of Requests on Appeal

It is well settled that an actual case or controversy must be extant at all stages of litigation, not merely at the time that a complaint is filed; otherwise, this Court will dismiss an appeal as moot. *Harris v. Rendell*, 982 A.2d 1030, 1035 (Pa. Cmwlth. 2009). An "actual case or controversy" is one that is real rather than hypothetical and affects someone in a concrete manner so as to provide a factual predicate for reasoned adjudication. *Finn v. Rendell*, 990 A.2d 100, 105 (Pa. Cmwlth. 2010). Exceptions to the mootness doctrine may be made where the conduct complained of is capable of repetition yet likely to evade judicial review, where the case involves issues of great public importance, or where one party will suffer a detriment without the court's decision. *Horsehead Res. Dev. Co., Inc. v. Dep't of Env't Prot.*, 780 A.2d 856, 858 (Pa. Cmwlth. 2001). As a pure question of

---

[8] When a case under the RTKL reaches this Court from a court of the common pleas, our standard of review is limited to determining whether findings of fact are supported by substantial evidence, or whether the lower court committed an error of law or abuse of discretion in reaching its decision. *Kaplin v. Lower Merion Twp.*, 19 A.3d 1209, 1213 n.6 (Pa. Cmwlth. 2011). The scope of our review is plenary. *Allegheny Cnty. Dep't of Admin. Servs. v. A Second Chance, Inc.*, 13 A.3d 1025, 1029 n.3 (Pa. Cmwlth. 2011).

law, the issue of mootness is subject to a *de novo* standard of review. *Commonwealth v. Dixon*, 907 A.2d 468, 472 (Pa. 2006).

Our Supreme Court examined the mootness doctrine within the specific context of the RTKL in *Chester Water Authority v. Department of Community and Economic Development*, 249 A.3d 1106 (Pa. 2021). In that case, a state agency denied a request for records of communication between the agency, a private consulting firm hired to manage the finances of the City of Chester, and two firms serving the agency as subcontractors. *Id.* at 1108. The state agency asserted various reasons for the denial, including attorney-client privilege and the attorney work-product doctrine. *Id.* at 1109. On the eve of oral argument before this Court, the state agency released records that it had initially withheld on those two grounds. *Id.* The requester nonetheless asked this Court to rule on whether the records had been properly withheld before their release. *Id.* We dismissed as moot that portion of the petition for review in light of the state agency's disclosure of the records, holding that the dispute between the parties was thereby rendered moot. *See Finnerty v. Pa. Dep't of Cmty. and Econ. Dev.,* 208 A.3d 178, 180 (Pa. Cmwlth. 2019).

While reversing this Court on issues that are not instantly relevant, the Supreme Court "affirmed as to the mootness of the attorney-client privilege and work-product doctrine issues." *Chester Water Authority*, 249 A.3d at 1115. The requester maintained that the Supreme Court should apply the mootness exception for matters important to the public interest, as *every* request under the RTKL entails "a matter of great public importance."[9] *Id.* The Court rejected that argument,

---

[9] The requester also argued that the mootness exception for matters capable of repetition, yet evading review, should be applied. *Chester Water Auth.*, 249 A.3d at 1115. The Court rejected that argument as well, reasoning that a course of unreasonable conduct by the state agency could be evaluated in its own right, "should it arise." *Id.*

observing that "not every claim arising under the [RTKL] crosses the high threshold for exception." *Id.* In the absence of a controversy meeting the requisite threshold, the Court opted to follow "the general, prudential approach" that "courts do not review moot questions." *Id.*

Instantly, Requester has stated that the release of a transcript of the McMahon Tape and a copy of the Basemore notification letter satisfied Item 4 of his request. *See* R.R. at 185a. The DAO argued before the Trial Court that "OOR's determination compelling the DAO to disclose these records [was] therefore moot." *Id.* at 104a. The Trial Court disagreed, reasoning that "Request[e]r had already initiated his OOR appeal before he attempted to withdraw portions of his initial request," and thus "lost the ability to modify, change[,] or add to his request in any form." Trial Ct. Op., 9/7/2021, at 4.

On appeal to this Court, the DAO cites *Chester Water Authority* for its assertion that, in the context of RTKL cases, "an appeal becomes moot when an agency provides responsive documents during the pendency of the appeal." DAO's Br. at 16. The DAO further argues that Requester's withdrawal of Items 1, 2, 5, and 6 also rendered moot those parts of his appeal to the Trial Court, as "a RTKL requester has the sole discretion to determine whether to appeal an agency's denial of a request in the first instance, whether to continue to seek the records during the pendency of an appeal, or whether to withdraw the request altogether."[10] *Id.* at 17. Upon the withdrawal of a request, the DAO concludes, "a court has no authority to

_____

[10] We note that the DAO raises the issue of mootness as to Items 1, 2, 5, and 6 of the request for the first time on appeal to this Court. The Trial Court therefore did not have an opportunity to rule on whether those parts of Requester's appeal were properly before it. "Under the mootness doctrine," however, "a case may be dismissed for mootness at any time by a court, because generally, an actual case or controversy must exist at all stages of the judicial or administrative process." *Pa. Liquor Control Bd. v. Dentici*, 542 A.2d 229, 230 (Pa. Cmwlth. 1988). Thus, we decline to deem the issue waived by the DAO.

disclose the records." *Id.* (citing *Motley Crew, LLC v. Bonner Chevrolet Co.*, 93 A.3d 474, 476 (Pa. Super. 2014)).

We first note our agreement with the DAO that Requester's withdrawal of his appeal as to Item 4 of his request rendered moot that part of this case. When an agency's denial is subject to appeal, Section 1101(a) of the RTKL places the burden on the requester to "state the grounds upon which the requester asserts that the record is a public record . . . and shall address any grounds stated by the agency for . . . denying the request." 65 P.S. § 67.1101(a). In this instance, Requester's appeal to the Trial Court made no such assertion; rather, Requester clearly stated that Item 4 had been satisfied and was therefore excluded from the appeal. As the Supreme Court observed in *Chester Water Authority*, the release of the requested documents settled any disagreement between the requester and the agency; "accordingly," the Court held, "the controversy has been mooted." 249 A.3d at 1114. Thus, it was not the Trial Court's role to maintain claims on appeal that Requester had abandoned.

We further determine that the same principle may be applied to Items 1, 2, 5, and 6 of the request, where Requester's withdrawal of his claims on appeal eliminated any case or controversy as to those items.[11] When the records identified in those parts of the request were no longer subject to the request, the question of whether the DAO fulfilled its duties became, at most, hypothetical. While Requester

---

[11] In his Brief to this Court, Requester appears to revive his interest in obtaining the records in question, noting the Trial Court's conclusion that his "attempt to withdraw portions of his request was *ineffective* because he lost the ability to modify or change his request in any form[,] since he had attempted to do so after initiating his OOR appeal." Requester's Br. at 8. Such arguments are legally insufficient to overcome a mootness determination, however, since the controversy must be "extant at all stages of review." *Harris v. Rendell*, 982 A.2d at 1035. *See Consol Pa. Coal Co., LLC v. Dep't of Env't Prot.*, 129 A.3d 28, 37-38 (Pa. Cmwlth. 2015) (explaining that, once a party supports its claim that an appeal is moot with credible evidence, the burden shifts to the opposing party to show that a genuine issue still exists).

was free to continue his appeal from the DAO's denial of Item 3 of the request, the Trial Court had no reasonable basis for pursuing the rest of his appeal *sua sponte*. Since no actual case or controversy exists where an agency has not released records that are no longer requested, the Trial Court should have dismissed as moot those components of the appeal.

Since the instant case is technically moot as to five of the six items in the request, our inquiry turns to whether the case falls within any of the exceptions to the mootness doctrine. The first exception to mootness—that the conduct complained of is capable of repetition yet likely to evade judicial review—involves two elements: (1) that the duration of the challenged action is too short to be fully litigated prior to its cessation or expiration; and (2) that there is a reasonable expectation that the same complaining party will be subjected to the same action again. *Commonwealth v. Buehl*, 462 A.2d 1316, 1319 (Pa. Super.1983). In this case, the duration of the DAO's denial of the relevant parts of the request is not of limited duration; meanwhile, we see no clear reason to suppose that Requester is likely to be subject to repeated, similar actions.[12]

Next, we determine if the matter falls under the mootness exceptions for matters of great importance to the public interest, or for those where a party will suffer a detriment without our decision. In *Chester Water Authority*, the Supreme

---

[12] This matter therefore stands in contrast to *Philadelphia Public School Notebook v. School District of Philadelphia*, 49 A.3d 445 (Pa. Cmwlth. 2012). In that case, as here, the government agency released records that had been requested (texts of resolutions voted on by school district officials) after an initial denial; OOR therefore dismissed the requester's appeal as moot. *Id.* at 447. This Court reversed, holding that the appeal fell under the mootness exception for matters capable of repetition, yet likely to evade review, because the requester (a news service) consistently reported on the officials' regularly occurring meetings in its news coverage. *Id.* at 449. Thus, it was foreseeable that the requester would continue to seek similar records following subsequent meetings. *Id.*

Court rejected the argument that the dispute over the records in that case met "the high threshold" for the public importance exception. 249 A.3d at 1115. If communications between a state government agency and a private firm tasked with managing the finances of an entire city were insufficient, then it would be unreasonable to conclude that the threshold is met in this instance. Finally, since Requester disclaimed any interest in obtaining the records sought by all parts of his request except Item 3, we see no reason to suppose that he would suffer a detriment from the DAO's failure to release records that were no longer requested. Under these circumstances, we decline to make an exception to the mootness doctrine for the instant matter.

As noted above, the Trial Court did not directly address the DAO's mootness arguments. Rather, it reasoned that Requester's withdrawal of his appeal as to Items 1, 2, 5, and 6 constituted an improper modification of his request, as requesters "may not, on appeal, argue that an agency must instead disclose different records in response to [a] request." Trial Ct. Op., 9/7/2021, at 4 (citing *Michak v. Dep't of Pub. Welfare*, 56 A.3d 925, 930 (Pa. Cmwlth. 2012)). Although we conclude that the threshold question of mootness is dispositive of this part of the case, we note that the general rule against modifying requests is inapposite here. As we explained in *Michak*, the belated modification of requests to include *new* records is forbidden because it would interfere with the agency's duty under the RTKL to respond promptly and specifically to the initial request. *See also Dep't of Corr. v. Disability Rts. Network of Pa.*, 35 A.3d 830, 833 (Pa. Cmwlth. 2012) (explaining that the modification of requests under appeal is not permitted because it "preclude[s] the [agency] from raising appropriate exemptions to disclosure"). That concern does not arise when a requester states his intent to appeal from the denial of some distinct

12

parts of his request but not others. To the contrary, we do not believe that the RTKL's purposes are meaningfully furthered by a court's ordering of a government agency to find, copy, and release records—a sometimes onerous and costly process—that no one is seeking. Based on the foregoing, we conclude that Requester was permitted to withdraw Items 1, 2, 4, 5, and 6 of his request,[13] and that the withdrawal rendered this case moot as to those items.

## B. Item 3 of the Request

Next, we examine the DAO's argument that the record requested at Item 3, a "complete record listing all individuals and/or agencies who received a copy of the 'McMahon Tape' or transcript of the same from the [DAO] (i.e., attorneys, defendants, prisons, jails, etc.)," R.R. at 5a., cannot be released because it does not exist.

Pursuant to Section 901 of the RTKL, an agency in receipt of a written request for a record shall make "a good faith effort to determine . . . whether the agency has possession, custody, or control of the identified record." 65 P.S. § 67.901. The burden of proving that a record does not exist, or is exempt from disclosure, is placed on the agency responding to the request. *Hodges v. Pa. Dep't of Health*, 29 A.3d 1190, 1192 (Pa. Cmwlth. 2011). To satisfy its burden of proof that it does not possess a requested record, an agency may submit an unsworn attestation by the person who

---

[13] We further note that our conclusion appears to be congruent with OOR's current understanding of the RTKL. For example, in *Sheliga v. Pennsylvania Department of State* (OOR Dkt. No. AP 2021-0462, filed Aug. 5, 2021), OOR noted the requester's stated intent to withdraw his appeal as to two of four items in his original request; OOR ruled that the agency was therefore "not required to take any further action" in response to those items. *Id.* at 8. *See also Williams v. East Stroudsburg Univ. of Pa.* (OOR Dkt. No. AP 2022-1445, filed July 25, 2022) (determining that the first item in a three-item request is "no longer at issue" following the requester's partial withdrawal of appeal). While OOR's final determinations are not binding on this Court, we may rely upon them for their persuasive value. *Pennsylvanians for Union Reform v. Pa. Off. of Admin.*, 129 A.3d 1246, 1256 n.16 (Pa. Cmwlth. 2015).

searched for the record or a sworn affidavit of nonexistence of the record. *Id.* at 1190.

In *Hodges*, a requester sought from the Department of Health the license verification and certificate of need for the private health care provider of the state correctional facility in which the requester was incarcerated. *Id*. at 1191. The Department of Health argued that it did not have authority over prison medical facilities, and that certificates of need were no longer issued. *Id*. Additionally, the Department of Health submitted an affidavit by its open records officer, attesting that "she made a good faith and thorough inquiry to determine if the Department was in possession of" the requested records. *Id*. While conceding that responsive records may exist somewhere "under another spelling, another name[,] or another classification," the open records officer concluded that, "[b]ased on her search," no responsive records were within the Department of Health's possession, custody, or control. *Id*. at 1191, 1193. OOR determined that the Department of Health met its burden of proof that it did not possess the requested records; this Court agreed. *Id*. at 1193. We explained that the open records officer's admission of the possible existence of responsive records did not contradict her ultimate conclusion, since the Department of Health "was not required to sift through all of its records in order to determine if something under a different spelling or classification might possibly relate to" the request. *Id*.

Instantly, ADA Robbins' unsworn declaration stated that she made inquiries to six department supervisors about whether any responsive documents existed; all responded that they were "unaware of any." *Id.* With specific regard to Item 3, ADA Robbins explained that the DAO did not possess a list of all recipients of the McMahon Tape, and that it did not have "a searchable database that would allow the

14

DAO to identify all cases" in which defendants were notified of the Tape. *Id.* Furthermore, ADA Robbins attested, any relevant files would be in an off-site storage facility, where they have not been digitized; thus, to compile the data sought by Requester would involve searching "thousands of boxes of materials." *Id.*

Rejecting the DAO's assertions, the Trial Court reasoned that ADA Robbins' statements "do not demonstrate clearly to what extent if any that actual searches were undertaken to attempt to locate potential responsive records."[14]  Trial Ct. Op., 9/7/2021, at 7.  The Trial Court acknowledged that the department supervisors who spoke with ADA Robbins were unaware of where responsive records could be found but countered that lack of awareness of responsive records and the actual nonexistence of responsive records "are two distinct scenarios." *Id.*  Thus, the Trial Court concluded that ADA Robbins' statements were "conclusory," and failed to describe "specific good faith efforts undertaken to locate the requested records." *Id.* at 8.

We disagree with the Trial Court that the DAO failed to show that it fulfilled its duties under the RTKL as to Item 3.  Our primary point of disagreement concerns the Trial Court's excessively narrow definition of what actions constitute a search.  There is nothing in the RTKL or our case law requiring an agency to physically pore through its archives in pursuit of a hypothetical record that could be anywhere, or nowhere.  To the contrary, we explained in *Hodges* that an agency has no duty to perform an exhaustive search of all its files in order to retrieve a record of indeterminate location or classification.  Rather, we held that the agency may fulfill

---

[14] Because it ruled that the DAO was required to release the records in all six items of the original request, the Trial Court did not address the DAO's appeal arguments as they related to Item 3 specifically.

15

its duty under the RTKL with "a good faith and thorough inquiry to determine if [it is] in possession of the records requested." 29 A.3d at 1191.

The Trial Court is correct that a records custodian's unawareness of a certain record is not the same thing as the actual nonexistence of that record. It should be clear that, if an open records officer denied access to a record *merely* by asserting her lack of personal knowledge of the record, that assertion alone would be insufficient to constitute a good-faith response. However, we believe that the Trial Court's concern is unwarranted in this instance, for two reasons. First, ADA Robbins explained in her affidavits that she was not only relying on the department supervisors' unawareness of the records in question; rather, she and other DAO employees carefully assessed what records from the relevant period are in the DAO's possession, and the means by which any relevant records in its case management system may be accessed.

The second reason is that we see no reasonable basis to suppose that a complete record of all individuals and agencies to have received a copy of the McMahon Tape from the DAO is currently in the DAO's possession, or that one was ever created in the first place.[15] The sole explanation offered by Requester for his belief that such a list exists is the assertion that the release of the McMahon Tape "would not have been possible unless the DAO had compiled a 'list of individuals'

---

[15] While Item 3 of the request could also be interpreted as requesting the compilation of a list based on research of the DAO's files, we note that such a request would be clearly impermissible. Section 705 of the RTKL provides that an agency responding to a request "shall not be required to create a record which does not currently exist or to compile, maintain, format or organize a record in a manner in which the agency does not currently compile, maintain, format or organize the record." 65 P.S. § 67.705. *See also Uniontown Newspapers, Inc. v. Dep't of Corr.*, 151 A.3d 1196, 1206 (Pa. Cmwlth. 2016) (explaining that the Department of Corrections had no duty under the RTKL to compile prison-wide diagnosis data based on individual inmate medical files, which would be "tantamount to the creation of a record").

that it determined should receive the [T]ape."[16] Requester's Br. at 11. In the absence of a reasonably precise identification of an existing record, or anything beyond speculation, ADA Robbins could draw a valid conclusion that the requested list was not in the DAO's possession following her inquiries.

## IV. Conclusion

Requester's withdrawal of Items 1, 2, 5, and 6 of the request, and his statement that a record provided by the DAO satisfies Item 4 of the request, obviates any remaining case or controversy between the parties as to those items. Thus, we conclude that the matter has been rendered moot regarding Items 1, 2, 4, 5, and 6 of the request. As for Item 3, we hold that the DAO met its burden of proof that the requested record does not exist. Thus, we reverse the Trial Court's order.

_____
ELLEN CEISLER, Judge

---

[16] In his Brief, Requester goes on to explain that, "[i]n other words, the names of the 19 defense attorneys who were recipients of the McMahon Tape did not appear out of thin air. What's more, the DAO has never explained the process it used to identify the 19 defense attorneys to whom it sent the [McMahon] Tape." Requester's Br. at 11. It is entirely possible, however, that District Attorney Abraham sent copies of the Tape to those 19 individuals without compiling a *complete* list of all individuals and agencies in receipt, which is what the request demands. Furthermore, no explanation has been given in this case as to why the DAO would have retained such a list for over 26 years despite its lack of a policy requiring "the retention of internal memos." *Id.* at 62a.

17

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

James Gray                              :
                                        :
        v.                              :   No. 800 C.D. 2021
                                        :
Philadelphia District Attorney's        :
Office,                                 :
                Appellant               :

# **O R D E R**

AND NOW, this 22nd day of February, 2024, the order of the Court of Common Pleas of Philadelphia County in the above-captioned matter, dated June 2, 2021, is hereby REVERSED.

_____
ELLEN CEISLER, Judge